### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ANNA MARIE ISSABELLE NEIRA,**

    **Plaintiff,**

                                          **CASE NO. 8:22-cv-1720-CEH-MRM**

**v.**

**BOB GUALTIERI, in his official capacity as Sheriff of Pinellas County, Florida, and NOBLE W. KATZER, individually.**

    **Defendants,**

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND TO STRIKE ALLEGATIONS

COMES NOW, Plaintiff, ANNA MARIE ISSABELLE NEIRA, ("Plaintiff Neira"), by and through her undersigned counsel, and pursuant to Local Rule 3.01(b), files her Response to Defendants BOB GUALTIERI and NOBLE W. KATZER's Motion to Dismiss the Amended Complaint and to Strike Allegations [Doc. 17] and in support thereof, states:

### INTRODUCTION

Defendants, BOB GUALTIERI, in his Official Capacity as Sheriff of Pinellas County, Florida ("Sheriff") and NOBLE W. KATZER, individually ("Katzer") seeks to dismiss Plaintiff Neira's Amended Complaint [Doc. 13] arguing dismissal based upon failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 8(a) and 12(b)(6) and to strike allegations pursuant to Fed. R. Civ. P. 12(f).

Plaintiff Neira brings this six (6) count action under the Civil Rights Act of 1871, 42 U.S.C. §1983, for excessive force and unlawful seizure/false arrest against individual Defendant Katzer of the Pinellas County Sheriff's Office, in violation of Plaintiff Neira's

rights under the Fourth Amendment.  Ms. Neira also brings an intentional infliction of emotional distress claim against Defendant Katzer in his individual capacity and a battery claim under Chapter 768, Fla. Stat., common law false arrest/imprisonment, and intentional infliction of emotional distress against Defendant Sheriff Gualtieri in his official capacity as Sheriff of Pinellas County, Florida.

## **FACTUAL BACKGROUND**

On April 13, 2019, Ms. Neira and friends enjoyed an evening at MacNasty's Sports Bar & Grill in St. Petersburg Beach [Pl.'s Amended Compl., ¶7]. Ms. Neira was the designated driver and did not consume any alcoholic beverages.  [*Id*. at ¶8]. As Ms. Neira and her friends sat at the bar, an altercation ensued between an off-duty, drunk, belligerent white female employee and black male (Jeremiah), who sat at the other end of the bar [*Id*. at ¶9].   The white female threw a drink in Jeremiah's face, physically assaulted, battered, and punched Jeremiah.  [*Id*. at ¶11]. Jeremiah attempted to step away from the white female, but the white female and her boyfriend grabbed Jeremiah and they all fell to the floor.  [*Id*. at ¶12. Other white patrons began to punch Jeremiah and physically attack him as well. [*Id*. at ¶13]. Jeremiah was not the aggressor, but was the victim lying on the floor bleeding after the white female kicked him in the mouth and taunted him with racial slurs by using the "N" word [*Id*. at ¶14].  Ms. Neira is a Registered Nurse and noticed Jeremiah lying on the floor in distress. [Id. at ¶15].   Ms. Neira immediately went to Jeremiah's aid to provide medical assistance.  [*Id*. at ¶15]. While Ms. Neira assisted Jeremiah, the young white female who had been involved in the brawl continued to yell at Jeremiah as he lay on the floor. [*Id*. at ¶16]. Ms. Neira respectfully asked her to stop using the racial slurs as they were vile words. [*Id*. at ¶ 18].  The white female stuck her foot in Jeremiah's face and stated, "you see this blood on my toe—that's

from your mouth!" [*Id.* at ¶17]. As Ms. Neira spoke to the white female and other males spoke to other males who assaulted and battered Jeremiah, Jeremiah lifted himself from the floor. [*Id.* at ¶19].   Defendant Deputy Katzer (Badge #54859) then entered the bar. [*Id.* at ¶20]. Defendant Deputy Katzer immediately approached Ms. Neira from behind, forcefully grabbed her right shoulder twice, and aggressively pulled it forward and in the opposite direction.  [*Id.* at ¶21]. Ms. Neira did not match the description of the suspect identified by the 911 caller.  [*Id.* at ¶39]. The 911 caller had identified Jeremiah, the black male, yet Defendant Deputy Katzer immediately battered Ms. Neira, a Spanish female who appeared distinctly different by race and skin color. [*Id.* at ¶33].  Ms. Neira had no idea who had grabbed her.  [*Id.* at ¶22].  As Ms. Neira attempted to gain her balance, Defendant Deputy Katzer pulled Ms. Neira from behind, dragged her across the room, and slammed her body into the wall. [*Id.* at ¶24]. As her shoulder and body twisted due to the force exerted by Defendant Katzer, Plaintiff Neira re-sprained her ankle, which was still healing from a previous sprain three-weeks earlier.  [*Id.* at ¶25]. Defendant Katzer then grabbed Ms. Neira around her neck with one hand and grabbed her male friend around the neck with the other hand. [*Id.* at ¶26].  Ms. Neira did not resist or threaten Defendant Deputy Katzer, she did not have any weapons and never posed a threat of imminent harm to Defendant Deputy Katzer. [*Id.* at ¶23]. After releasing Ms. Neira's male friend's neck, Defendant Deputy Katzer became more violently angry and forcefully grabbed Ms. Neira.  [*Id.* at ¶27]. He then threw Ms. Neira against the wall and then onto a video game console, where he repeatedly smashed her head onto her left arm, which protected her head from making direct contact with the glass on the game machine.  [*Id.* at ¶28].  The weight and force of Defendant Deputy Katzer's body pressed and pinned her against the video game console, this caused her to defecate upon her person.  [*Id.* at ¶29].

3

While slamming her face into her arm, which was stretched upon the game machine, Defendant Deputy Katzer twisted Mr. Neira's right arm such that it extended upward towards the center of her back and in the direction of her head, causing severe pain. [*Id.* at ¶30]. Ms. Neira sustained serious injuries, including a concussion from being thrown into the wall and slammed upon the game machine, a torn right rotator cuff, torn labrum on her right shoulder, sprained right ankle, contusions to her left and right arms extending from her elbow to her wrist, contusions to her left hip and the entirety of her body. [*Id.* at ¶44]. A bar employee (Trish), other bar patrons, and Ms. Neira's friends continued to tell Defendant Deputy Katzer that he had the wrong person and that Ms. Neira did nothing wrong. [*Id.* at ¶32]. Defendant Deputy Katzer told Ms. Neira's friends that she chose to help the wrong person, who was known to Ms. Neira to be the black male whom she helped. [*Id.* at ¶34]. Defendant Deputy Katzer carried out these excessively forceful actions within thirty (30) seconds of his entering the bar and without asking questions of anyone present. [*Id.* at ¶31]. Defendant Deputy Katzer arrested Ms. Neira and charged her with battery on a law enforcement officer. [*Id.* at ¶35]. Ms. Neira was then transported to the Pinellas County Jail. [*Id.* at ¶37]. There was no probable cause or arguable probable cause to arrest Ms. Neira or cause to believe Ms. Neira was in the process of committing a crime, had committed a crime, or that a criminal act was afoot in the near future. [*Id.* at ¶38]. Ms. Neira did not batter Defendant Deputy Katzer. [*Id.* at ¶36]. Once transported to the Pinellas County jail, Ms. Neira was not permitted to use the restroom to clean her body until nearly fourteen (14) hours after Deputy Defendant Katzer embarrassingly caused her to defecate on herself. [*Id.* at ¶40]. At the jail facility, Ms. Neira requested medical attention for her severely swollen, sprained ankle and her injured shoulder; however, despite the pain, jail intake staff refused to provide medical

attention.  [*Id.* at ¶41]. In addition, Ms. Neira was forced to walk up the stairs and also forced to carry a heavy mattress back downstairs while suffering from the severely swollen ankle injury and the injured shoulder. [Id. at ¶42].  On May 17, 2019, the State Attorney's Office dropped the charges and concluded, "that the facts and circumstances revealed [did] not warrant prosecution." [*Id.* ¶ 43].

**MEMORANDUM OF LAW AND ARGUMENT**

## I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). In considering a 12(b)(6) motion to dismiss, a court's review is "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 959 (11th Cir. 2009)(citations omitted). Plaintiff's allegations should be construed liberally as the issue is not whether plaintiff will prevail but whether the allegations are sufficient enough to allow a plaintiff to conduct discovery in order to prove the allegations. *Gilroy v. Gualtieri of Fort Pierce*, 2019 U.S. Dist. LEXIS 51865 (S.D. Fla. 2019).

## II.    DEFENDANT KATZER IS NOT ENTITLED TO QUALIFIED IMMUNITY FOR VIOLATING PLAINTIFF'S CLEARLY ESTABLISHED CONSTUTIONAL RIGHTS

A government official "asserting the qualified immunity defense  bears the initial

burden of showing he was acting within his discretionary authority." *Moore v. Sheriff of Seminole Cty*., 2018 WL 4182120, at *2 (11th Cir. Aug 30, 2018) (citation and quotation marks omitted). The burden then shifts to the Plaintiff to apply a two-prong inquiry: (1) taken in the light most favorable to the Plaintiff, whether the officers violated a constitutional right and (2) whether the right was clearly established. *Saucier v. Katz*, 553, U.S. 194 (2001). Qualified immunity balances two important public interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019).  A government official "asserting the qualified immunity defense bears the initial burden of showing he was acting within his discretionary authority." *Moore v. Sheriff of Seminole Cty*., 2018 WL 4182120, at *2 (11th Cir. Aug 30, 2018) (citation and quotation marks omitted). The burden then shifts to the Plaintiff to apply a two-prong inquiry: (1) taken in the light most favorable to the Plaintiff, whether the officers violated a constitutional right and (2) whether the right was clearly established. *Saucier v. Katz*, 553, U.S. 194 (2001).

### A. Defendant Deputy Katzer is not entitled to qualified immunity for violating Ms. Neira's Fourth Amendment constitutional right to be free from excessive force.

"A claim that law enforcement officials have used excessive force . . . in the course of an arrest, investigatory stop or other seizure of a person is properly analyzed under the Fourth Amendment's objectively reasonableness standard." *Graham v. Connor*, 490 U.S. 386 (1989). "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville, Ala*., 608 F.3d 724 (2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "While some force is permitted in effecting an

arrest, whether the force is reasonable depends on a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake" *Id.* (citations omitted).

"To balance the necessity of the use of force . . . against the arrestee's constitutional rights, a court must evaluate several factors, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [s]he is actively resisting or attempting to evade arrest by flight." *Id.* [Eleventh Circuit] cases hold that, "the gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008); (*Saunders v. Duke,* 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment . . . if he or she used gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands.") "A court looks to the totality of the circumstances to determine whether the manner of arrest was reasonable." *Draper v. Reynolds*, 369 F.3d 1270 (2004) (citing *Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion . . . against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations omitted). "Whether or not the force used is clearly excessive, depends on an evaluation of what was reasonable under the circumstances. *Id.*

Defendant Katzer cites to *Graham* contending the right to arrest "necessarily carries with it the right to sue some degree of physical coercion or threat thereof to effect it." Plaintiff agrees, if said force is deemed necessary. Defendant Katzer further cites to *Jean-Baptiste v. Gutierrez*, 627 F.3d  820-21, and argues that "police officers are often

forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Defendant then makes the leap surmising that Defendant Katzer's use of force upon Ms. Neira was *de minimis* and does not give rise to a 1983 excessive force claim.   However, this argument is clearly deficient and begs the question—under the circumstances, was "any" level of force necessary?

Here, when Defendant Katzer arrived at the bar, Ms. Neira was not committing a crime and had not committed a crime.  In fact, Ms. Neira, as a Registered Nurse, attended to the male who was bleeding and who had been battered by the intoxicated bar employee. Defendant Katzer alleges that the manner in which he used force upon Ms. Neira was apparently "a relatively common and ordinarily accepted non-excessive way to detain an arrestee, citing *Nolan* to justify *de minimis* force. However, *Nolan* is highly distinguishable and the Eleventh Circuit stated, "The rule in this Circuit is that the application of *de minimis* force, without more, will not support a claim for excessive force. *Nolin v. Isbell*, 207 F. 3d 1253, 1257 (11th Cir. 2000). "Without more" are crucial terms, as the doctrine requires a situation involving both a minimal amount of force and minimal amount of injury. *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000). Thus, in *Nolin*, where there existed a minimal amount of force that only caused bruising to his forehead, chest, and wrists, where the bruising disappeared quickly and he sought no medical treatment, this did not violate the constitution. Highly distinguishable to *Nolin*, Ms. Neira faced more than that which amounts to *de minimis* force.  Ms. Neira faced serious injuries which required surgery.

Defendants also cite to *Woodruff* to support its contention of *de minimis* force.  In *Woodruff*, the court emphatically made it clear that "under the circumstances, punching

8

the plaintiff in the face, forcefully removing him from his car, and slamming him into the ground was only *de minimis.*" *Woodruff v. Trussville,* 434 F. App'x 852 (11th Cir. 2011). Relevant are the words, "under the circumstances." Unlike Ms. Neira, Woodruff "evaded officers by driving recklessly on the interstate highway, failed to pull over when officers turned on flashing lights, and endangered other drivers and the officers through his actions." *Id.* Other than Woodruff striking his head on the ground, there were no significant injuries noted. *Id.* Again, it cannot be ignored that Ms. Neira faced significant injuries which required surgery to repair.

More specifically, in the instant matter, in applying the *Graham* objective reasonableness factors to determine the necessity for force, again, one must ask whether any force against Ms. Neira was necessary under the circumstances. Plaintiff argues that given what was known to Defendant Katzer, no force was necessary. In examining each factor:  (1) the severity of the crime at issue, Ms. Neira had not committed a crime and was not committing a crime by attending to someone who had been injured.  Thus the need to approach Ms. Neira from the rear, grab her and forcefully injured her arm by throwing her onto the gaming machine was far beyond that which was necessary to determine if Ms. Neira may have been in any way involved in an altercation.  In evaluating the second factor, (2) whether the suspect poses an immediate threat to the safety of the officers or others, it was known to Defendant Katzer that Ms. Neira clearly did not fit the description of the suspect for which  his aid was necessary to report to the scene.  The suspect was allegedly reported as a black male who purportedly committed a crime against a white female. Although Defendant Katzer argues that the identification of parties by race is scandalous and impertinent, these identifiers are highly relevant to the inquiry of what information was known and what information was unavailable. Moreover,

race as a factor to identify suspects is not a new tool and is often helpful and crucial to law enforcement officials.  Thus, to minimize this as irrelevant only reduces the argument to language which is uncomfortable, but necessary to this discussion.

Assuming *arguendo* Defendant Katzer was unaware of the suspect, patrons pointed Defendant Katzer to the alleged suspect and specifically told him that Ms. Neira was not the correct person with whom he needed to confront.  Finally, in examining the third factor, (3) whether [s]he is actively resisting or attempting to evade arrest by flight." In no manner had Ms. Sapp committed a crime, let alone attempt to evade arrest by flight. In fact, Ms. Neira did not resist Defendant Katzer as he approached her from the rear.  It is reasonable that given the events occurring at the bar, a reasonable person would be startled to be forcefully approached by someone from the rear without knowledge and as a result, turn and be startled to some extent.  This is quite a stretch to surmise this as resisting.   Therefore, under the totality of the circumstances, Defendant Katzer cannot hide behind the qualified immunity shield.  Looking to the reasonableness factors, a reasonable officer would not believe that the level of force applied such that Ms. Neira required surgery to repair the damage to her shoulder was reasonable under the circumstances. In the light most favorable to the Plaintiff, Defendant Katzer's Motion to Dismiss Count I must be denied.

**B.    Defendant Deputy Katzer is not entitled to qualified immunity for violating Ms. Neira's constitutional right to be free from arrest without probable cause under Federal and Florida law..**

"There are three levels of law enforcement encounters: (1) consensual encounter, (2) an investigatory stop as enunciated in *Terry*, and (3) an arrest." *Robinson v. State*, 976 So.2d 1229 (2008) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). In the case of an arrest, "it is clearly established that an arrest made without probable cause violates the Fourth

Amendment." *Wilkerson v. Seymour*, 736 F.3d974 (11th Cir. 2013). "The standard for determining existence of probable cause toarrest is same under both Florida and federal law—whether reasonable man wouldhave believed probable cause existed had he known all facts known by officer." *Rankins v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). "Probable cause to arrest exists under both Florida and federal law when facts and circumstances within officer's knowledge, of which he or she has reasonably trustworthy information, would cause prudent person to believe, under circumstances shown, that suspect has committed, is committing, or is about to commit offense." *Id.* at 1435.

"The critical problem in this case, however, is that something more than the unfounded suspicion necessary to stop and investigate is needed to give rise to probable cause to arrest." *Id.* (citing *State v. Dickey*, 203 So.3d 958, 961 (Fla. 1st DCA 2016). "A mere suspicion that a person is illegally [involved in an altercation]is insufficient to supply probable cause for a search [and arrest]." *State v. Witherspoon*, 924 So.2d 868, 871 (Fla. 2d DCA 2006)."A mere suspicion that a person is illegally [involved in an altercation]is insufficient to supply probable cause for a search [and arrest]." *State v. Witherspoon*, 924 So.2d 868, 871 (Fla. 2d DCA 2006).

Defendant Katzer argues he had probable cause or arguable probable cause to arrest Ms. Neira. This is not so. Defendant Katzer seemingly arrested Ms. Neira for simply being at the scene of a person who was injured, which is not a crime to render aid. Moreover, if Defendant Katzer had committed a crime, Defendant certainly failed to take the time necessary to inquire and/or listen to patrons when they stated Ms. Neira was not the person of interest. There was a suspect and Ms. Neira by no means, fit the description of the suspect. Defendant Katzer cites to *Case v. Eslinger*, 555 F. 3d1317, 1327 (11th Cir. 2009) and correctly states relative to probable cause, "[it] exists when law enforcement

officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." However, this is problematic in that Ms. Niera was not a suspect, she had not committed a crime and was not in the process of committing a crime. In fact, there was no probability of Ms. Neira having committed a crime when she did not fit the description of the suspect. As much as Defendant Katzer would like to state that he had no description of the suspect, it is highly likely that a jury would find that law enforcement officers are equipped with a description of a known suspect prior to reporting to the scene of an alleged crime.

Therefore, taking the facts in the light most favorable to Ms. Neira, a reasonable jury could find there was no probable or arguable probable cause for Ms. Neira's arrest. Therefore, Defendant Katzer's Motion to Dismiss Counts II and IV under Federal and Florida law must be denied.

### C.   Defendant Katzer violated Ms. Neira's rights that were clearly established at the time of the incident.

The excessive force used by Katzer violated clearly established law. "A constitutional violation can be clearly established by showing (1) a materially similar case, (2) pointing to a broader clearly established principle that controls the novel facts of the situation, or (3) demonstrating that the conduct involved in the case "so obviously violate the constitution that prior case law is unnecessary." *Terrell v. Smith*, 668 F. 3d 1244, 1255-56 (11th Cir. 2012); See *Smith v. Mattox*, 127, F.3d at 1419-20 (concluding the case falls within the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying caselaw).

"The relevant, dispositive inquiry in determining whether a right is clearly established, for purposes of qualified immunity in civil rights action, is whether it would

be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Thompson v. Douds*, 852 So.2d 299, 304 (2003). "For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that  right . . . but in light of pre-existing law, the unlawfulness must be apparent." *Id*; (citing *Anderson v. Creighton*, 483 U.S. 635, 64 (1987)). "Thus, the salient question for the court is whether the law in place at the time of the incident gave the officer[] fair warning that [his] treatment of the Plaintiff was unconstitutional." *Id.*; (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

"When a Plaintiff alleges a violation of the Fourth Amendment, the question is whether the search or seizure was effected with reasonable force." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The court must consider the facts alleged in the light most favorable to the plaintiff and must determine whether those fact state a constitutional violation." *Thompson*, 852 So.2d at 305 (citations omitted). "Having established that the facts alleged show a violation of the Fourth Amendment, the court must consider whether that constitutional right was clearly established." *Id*. at 306. "This does not mean that the individual officers had to know of an actual case on point." *Id*. Rather, the question is whether the individual officers had fair warning that their treatment of [Ms. Neira] was unconstitutional." *Id*.

Analogous to Ms. Neira's case, *Smit*h represents (1) a materially similar case and satisfies (3), where the court held the violation was such an obvious violation, no prior case law was necessary. In *Smith*, the Court stated, "Such conduct goes beyond the border between excessive and acceptable force and violated clearly established rights." *Id*. Turning to (2), in addressing the level of clarity required for the specific conduct in question rather than general Fourth Amendment principles, Defendant Katzer alleges

that Plaintiff makes conclusory statements regarding constitutional violations; however, this is not so.  Plaintiff has stated clear facts to support her claim that Defendant Katzer violated her constitutional right to be free from excessive force and arrest without probable cause.  Despite Defendant Katzer's contention, Plaintiff, Ms. Neira has presented a materially similar case and such is not required when the conduct is so clear that the violation is obvious.

Here, applying sufficient force to tear Ms. Neira's labrum requiring surgery cannot be viewed as reasonable when Ms. Neira was not a suspect, had not committed a crime, nor was she in the process of committing a crime.  In addition, it is obvious to a law enforcement officer that arresting Ms. Neira without probable cause was clearly established and commonplace in basic training, experience and periodic law enforcement training.  Thus, there is no reasonable explanation for Defendant Katzer's actions and at the time of the incident in question, the law was clearly established relative to excessive force and arrests without probable cause. Therefore, taking the facts in the light most favorable to Ms. Neira, a reasonable jury could find there was no probable or arguable probable cause for Ms. Neira's arrest. Therefore, Defendant Katzer's Motion to Dismiss Counts II and IV under Federal and Florida law must be denied.

### D.   Defendant Katzer used objectively unreasonable and excessive force against Ms. Neira, thus the battery against Defendant Sheriff Gualtieri is not barred by sovereign immunity.

Defendant Gualtieri is not entitled to sovereign immunity for the battery committed by Defendant Katzer.  Defendant Gualtieri has asserted that it he not liable for the tortious acts of Defendant Katzer and the claim is barred by state sovereign immunity. "As a threshold matter, under Florida law, battery is an intentional tort." *Amparo v. Classica Cruise Operator Ltd. Inc.,* No. 20-CV-60896-RAR, 2021 WL 4989915, at *4

14

(S.D. Fla. Oct. 26, 2021) (citing *Sullivan v. Atl. Fed. Sav. & Loan Ass'n.*, 454 So. 2d 52, 54 (Fla. 4th DCA 1984).  A battery claim for excessive force is analyzed by focusing on whether the amount of force used was reasonable under the circumstances. *Gualtieri of Miami v. Sanders,* 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996) (citations omitted). The Restatement (Second) of Torts § states the essential elements of the intentional tort of battery are intent and contact: (1) An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) an offensive contact with the person of the other directly or indirectly results.

"When ruling on a motion to dismiss based on sovereign immunity, courts are required to treat as true the complaint's allegations, 'including those that incorporate attachments, and to look no further than the . . . complaint and its attachments.' " *Gualtieri v. Bogle*, 343 So. 3d 1267, 1271 (Fla. Dist. Ct. App. 2022) (holding that Plaintiffs never alleged Defendant Officer acted with malicious purpose, wanton and willful disregard of human rights, safety, or property) (citations omitted).  Pursuant to 768.28(9)(a), Fla. Stat., "The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad

faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *Id*.

Acts committed "within" the course and scope of an officer's employment places the governmental entity or head liable for such acts.  The alleged facts reveal that Defendant Katzer undoubtedly worked within the course and scope of his employment when he arrived at the bar and used unreasonable and excessive force upon Ms. Neira. Defendant Katzer argues that he had the right to use some degree of force; however, the argument remains as in Count I under federal law.  Defendant Katzer cannot explain the reasonableness of the need to forcefully grab Ms. Neira from behind, and throw her into a gaming machine and extending her arms to the point of tearing her labrum, requiring surgery.  The battery claim falls within the realm of cases wherein Defendant Gualtieri is liable for the intentional torts committed by Defendant Katzer (sovereign immunity waived for torts for assault, battery, and false arrest). Under the circumstances, no level of force was necessary as Ms. Neira had committed no wrong and no crime.

Therefore, taking the facts in the light most favorable to Ms. Neira, a reasonable jury  could  find  the  force  used  against  Ms.  Neira  was  unreasonable  under  the circumstances, amounting to a battery. Defendant Katzer's Motion to Dismiss Count  III must be denied.

**E.   No probable cause existed to arrest Ms. Neira, thus Defendant Sheriff Gualtieri is liable for false arrest/false imprisonment under state law committed by Defendant Katzer (Count IV).**

In Florida, false arrest and false imprisonment claims are used interchangeably and represent the same causes of action in that they both focus on the unlawful restraint of a person. *Bright v. Gualtieri of Tampa*, 2017, No. 8:16-cv-1035-T-17MAP 2017 2021 WL 52448450, at *4 (M.D. Fla. May 17, 2017). More specially, false arrest is "the unlawful

restraint of a person against that person's will." *Willingham v. Gualtieri of Orlando*, 929 So.2d 43, 48 (Fla. 5th DCA 2006). Florida has waived sovereign immunity for tortious acts committed by the state, its agencies, or subdivisions. Fla. Stat. §768.28(1) 2016. The tort of false arrest is an intentional tort and . . . requires proof of "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances."*Jibory v. Gualtieri of Jacksonville*, 920 So.2d 666, 667 (Fla. 1st DCA 2005); *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So.2d 1266, 1268 (Fla. 4th DCA 2006).

The existence of probable cause to arrest is an affirmative defense to a false arrest claim." *Miami–Dade Cty. v. Asad*, 78 So.3d 660, 669 (Fla. 3d DCA 2012). "An arresting officer, however, is required to conduct a reasonable investigation in order to determine whether probable cause exists to arrest a person." *Harder v. Edwards*, 174 So.3d 524, 534 (Fla. 4th DCA 2015). "Moreover, "[w]here it would appear to a 'cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so." *Harris v. Lewis State Bank*, 482 So.2d 1378, 1382 (Fla. 1st DCA 1986).

Defendant Sheriff Gualtieri argues that this claim is barred by sovereign immunity because probable cause existed for Ms. Neira's arrest. However, Plaintiff disagrees. As previously noted, Ms. Neira had not committed a crime and was not a suspect to a crime. Moreover, she did not fit the description of the suspect, who was allegedly a black male and Ms. Neira is a white female. In addition, Defendant Katzer failed to ask any questions or engage in any type of inquiry regarding the allegations from the 911 caller, who was likely present at the bar. There was no "fair" probability Plaintiff was involved in the bar brawl when Ms. Neira was helping the individual on the floor. Coupled with this lack of

probability, bar patrons specifically told Defendant Katzer that Ms. Neira was not the person of interest.  Yet, Defendant Katzer continued his unlawful conduct.  Defendant Katzer replied to state that Ms. Neira chose to help the wrong person.  A jury may infer that Defendant Katzer had an awareness that Ms. Neira had not in fact committed a crime, but she was subjected to arrest for helping the black male (known to Ms. Neira as the wrong person).

Further, Defendants raise the argument that the State Attorney's Office's failure to prosecute has no bearing upon or is irrelevant.  However, this is flatly untrue.  Defendants then leap to make a comparison between probable cause to arrest and the "beyond a reasonable doubt" standard in criminal cases.  It must be noted that the failure to prosecute by the State Attorney's Office confirms the lack of probable cause.  In evaluating the very definition of probable cause, Defendants extensively cited to cases to state that probable cause takes into consideration the "facts and circumstances within their knowledge sufficient to warrant a belief that the 'suspect' had committed a crime.'  This is consistent with actions taken by the state attorney's office—noting, "the facts and circumstances revealed [did] not warrant prosecution."  If every officer is permitted to have a mere hunch of suspicion without conducting a minimal investigation to determine whether probable cause exists, unfettered discretion to arrest would go unchecked and officers would be unaccountable for their unlawful conduct.  This is not the intent of Fourth Amendment or Florida jurisprudence.  Defendant then leaps to the low probable cause standard and the high reasonable doubt standard, yet this continued comparison fails to take into consideration that the State Attorney's Office had no facts that would even support prosecution.

Therefore, taking the facts in the light most favorable to Ms. Neira, a reasonable

jury could find the force used against Ms. Neira was unreasonable under the circumstances, amounting to a battery. Defendant Katzer's Motion to Dismiss Count III must be denied.

### F. Defendant Sheriff Gualtieri is liable for Intentional Infliction of Emotional Distress committed by Defendant Katzer (Count V)

Plaintiff, Ms. Neira agrees to withdraw the claim against Defendant Katzer in his individual capacity.

### G. Defendant Katzer is liable for Intentional Infliction of Emotional Distress for actions and conduct of jail staff (Count VI).

Plaintiff has sufficiently stated a cause of action against Defendant Katzer for intentional infliction of emotional distress. "In order to state a cause of action for intentional infliction of emotional distress under Florida law, the Plaintiff must plead the following elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the complained of conduct must have caused the suffering; and (4) the suffering must have been severe." *Perez v. Pavex Corp.*, 2002 WK 31500404 *3 (M.D. Fla. 2022) (citing *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 1009, 1010 (Fla. DCA 1985). Conduct is considered "outrageous", when it is "so outrageous in in character, and so extreme indegree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Here, the conduct of the jail staffers was outrageous and went beyond all bounds of decency and regarded as atrocious and utterly intolerable in a civilized society. When failing to permit Ms. Neira to enter a restroom to clean feces from her body as a result of actions by Defendant Katzer earlier in the night. In addition to having to endure feces upon her person and endure the odiferous smell, this could be considered a mere punishment for allegedly committing a crime she did not commit. Moreover, Ms. Neira suffered severe injuries to her shoulder and her ankle, yet she was required to carry a

mattress up and down the stairwell, despite the pain.  These actions, coupled with continued feces upon her person was not only the deliberate and reckless infliction of mental suffering, but highly egregious. Therefore, in viewing the facts in the light most favorable to the Plaintiff, Defendants' Motion to Dismiss Count VI must be denied.

### III.    PLAINTIFF HAS NOT ALLEGED IMMATERIAL, IMPERTINENT AND SCANDALOUS FACTS AS TO BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(f).

Fed. R.  Rule 8(a)(2) requires a complaint to be "a short and plain statement of the claim showing that the pleader is entitled to relief." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). Defendants contend Plaintiff has set forth immaterial, impertinent, and scandalous facts that should be stricken pursuant to Fed. R. Civ. P 12(f).  Defendants further allege that any references to race give the appearance that Defendant Katzer is a racist. However, there are no such statements that refer to Defendant Katzer as a racist.  However, when factual allegations that are set forth suggest or possibly allow a jury to consider facts and events as they occur, those facts related to the incident in question cannot be omitted solely because they are uncomfortable to Defendant Katzer.  More specifically, any reference to race is highly relevant to the historical facts and circumstances surrounding the incident must be alleged as they occurred. In other words, because race presents a potentially uncomfortable dialogue will not result in Plaintiff's inability to state those facts as to not appear offensive to Defendant Katzer.

Here, Defendant Katzer noted that historical facts are to be considered.  Therefore, the circumstances involved factual events such as: 1) the patrons were predominantly white, 2) the employee who became drunk and behaved belligerently was white. These two facts are relevant because she specifically shouted racial slurs and used the "N" word

towards an individual who was black.  Thereafter, when Defendant Katzer entered the bar and was told that Ms. Neira was not the suspect, he specifically stated that Ms. Neira chose to help the wrong person.  A jury could infer Defendant Katzer made the statement to refer to Ms. Neira having helped the black male.  However, references to race in this context should not be stricken as they are relevant to events that occurred in the bar. Uncomfortable references to race and ethnicity such as "black" and white" do not equate to terms that should not be addressed or stricken from a complaint.  Plaintiff has sufficiently pled allegations as required under Fed. R. Civ. P. 8(a).  Despite Defendants' leap to state the terms are impertinent, immaterial, or scandalous strips Ms. Neira of her ability to state the facts and circumstances as they occurred during the incident for which she was subjected to the excessive use of force and falsely arrest.  Therefore,  references to race may present uncomfortable conversations, but should not render the material immaterial, impertinent, and scandalous and should not be stricken under Fed. R. Civ. P. 12(f),

## IV.   CONCLUSION

Accordingly, for all of the reasons stated herein, taking the facts in a most favorable to Ms. Neira, as the non-moving party, Defendants Bob Gualtieri, in his official capacity as Sheriff of Pinellas County, Florida, and Noble W. Katzer's Motion to Dismiss should be denied on all claims.

RESPECTFULLY submitted this 4th day of November 2022.

21

*/s/ Farnita Saunders Hill*
Farnita Saunders Hill, Esq.
Florida Bar No.: 1012158
MORGAN & MORGAN, P.A.
313 N. Monroe Street, Suite 401
Tallahassee, Florida 32301
Phone: (850) 201-2453
Fax: (850) 201-1273
Email: farnitahill@forthepeople.com
Secondary: shuss@forthepeople.com
Tertiary: rspencer@forthepeople.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed

and furnished via CM/ECF to all counsel of record this 4th day of November 2022.

*/s/ Farnita Saunders Hill*
FARNITA SAUNDERS HILL