## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANNA MARIE ISSABELLE NEIRA,

     Plaintiff,

v.                                                      Case No: 8:22-cv-1720-CEH-UAM

BOB GUALTIERI and NOBLE W
KATZER,

     Defendants.

_____

## <u>ORDER</u>

This cause comes before the Court on the Motion to Dismiss of Defendants Bob Gualtieri and Noble W. Katzer (Doc. 17), Plaintiff Anna Maria Issabelle Neira's response in opposition (Doc. 21), and Defendants' reply (Doc. 24).  In this civil rights action, Plaintiff alleges that Katzer, a Pinellas County sheriff's deputy, committed a false arrest and used excessive force in violation of her federal rights.  She also alleges that Gualtieri, the Pinellas County Sheriff, is liable in his official capacity for Katzer's and jail staff's violations of her state rights.  Defendants assert that all of the claims are due to be dismissed for failure to state a claim and because they are protected by qualified or sovereign immunity.  Defendants also move to strike certain allegations under Federal Rule of Civil Procedure 12(f).  Also before the Court is Defendants' unopposed motion to stay discovery pending disposition of the motion to dismiss (Doc. 18).

Upon review and consideration, and being fully advised in the premises, the Court will grant-in-part and deny-in-part the motion to dismiss, and deny as moot the motion to stay discovery.

## I.    BACKGROUND[1]

Plaintiff filed a complaint against Defendants in the Sixth Judicial Circuit in and for Pinellas County on June 28, 2022. Doc 1-1.  Defendants subsequently removed the action to this Court. Doc. 1.  In the Amended Complaint, Plaintiff alleges that she spent the evening of April 13, 2019, with friends at MacNasty's Sports Bar & Grill in St. Pete Beach. Doc. 13 ¶ 7.  She was not drinking because she was the designated driver. *Id.* ¶ 8.  An altercation broke out between a black male named Jeremiah, a white female off-duty employee, and other patrons at the far end of the bar from where Plaintiff was sitting. *Id.* ¶¶ 9-13.  The altercation resulted in Jeremiah "lying on the floor bleeding." *Id.* ¶14.  Plaintiff, a registered nurse, went to Jeremiah to provide medical assistance. *Id.* ¶15.  She exchanged words with the patrons involved in the altercation while Jeremiah got up from the floor. *Id.* ¶¶ 16-19.

At this point, Deputy Katzer entered the bar. *Id.* ¶ 20.  He immediately approached Plaintiff from behind, grabbed her right shoulder twice, and aggressively pulled it back and forth. *Id.* ¶¶ 21-22.  Plaintiff did not know who had grabbed her and

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). With limited exceptions, the Court cannot look outside the pleadings in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d).

attempted to gain her balance, but did not resist or threaten Katzer. *Id.* ¶¶ 22-24. Katzer pulled and dragged her across the room from behind and slammed her body into the wall and grabbed her around her neck. *Id.* ¶¶ 24-26.  He then threw her onto a video game console, where he repeatedly smashed her head into her left arm, which was lying on the console, while twisting her right arm upward toward the center of her back and head. *Id.* ¶¶ 28-30.  The weight and force of Katzer's body pinning her to the console caused her to defecate on herself. *Id.* ¶ 29.  As a result of Katzer's actions, Plaintiff experienced severe pain, had a concussion, a torn right rotator cuff, a torn labrum on her right shoulder, a sprained right ankle, and contusions to the entirety of her body. *Id.* ¶¶ 25, 30, 44.  Her injuries necessitated shoulder surgery and physical therapy. *Id.* ¶ 45.

Plaintiff alleges that Katzer carried out these actions without asking questions of anyone present, and despite several individuals telling him that he had the wrong person and Plaintiff had done nothing wrong. *Id.* ¶¶ 31-32.  A 911 caller had identified Jeremiah, a black male, as the suspect; Plaintiff, a Latina female, did not match Jeremiah's description. *Id.* ¶¶ 33, 39.  Katzer told Plaintiff's friends that she "chose to help the wrong person." *Id.* ¶ 34.

Katzer arrested Plaintiff and charged her with battery on a law enforcement officer and/or resisting an officer without violence, although she did not batter or resist him nor present a threat of violence or danger to him. *Id.* ¶¶ 35-36, 65-66.  After being taken to the Pinellas County jail, Plaintiff's requests for medical attention were ignored

and she was denied the opportunity to clean herself for 14 hours. *Id.* ¶¶ 40-41.  Her injuries were aggravated when she was forced to walk upstairs and carry a heavy mattress downstairs. *Id.* ¶ 42.  On May 17, 2019, the State Attorneys' Office dropped the charges against her. *Id.* ¶ 43.

Counts I and II of the Amended Complaint allege that Katzer, in his individual capacity, is liable under 42 U.S.C. § 1983 for violating Plaintiff's Fourth Amendment rights: Count I alleges that he used excessive force, and Count II alleges that he falsely arrested her. *Id.* ¶¶ 51-70.  Counts III and IV allege that Sheriff Gualtieri, in his official capacity, is vicariously liable under state law for Katzer's battery and false arrest. *Id.* ¶¶ 71-85.  Counts V and VI allege that Gualtieri is vicariously liable for Katzer's intentional infliction of emotional distress for causing Plaintiff to defecate on herself (Count V), and jail staff's intentional infliction of emotional distress for refusing to allow her to clean herself (Count VI). *Id.* ¶¶ 86-99.

Defendants now move to dismiss all counts. Doc. 17.  They first argue that Plaintiff has not met her burden of disproving that Counts I and II are barred by qualified immunity.  As to Count I, excessive force, the type of force allegedly used against her was de minimis and did not violate the Fourth Amendment. *Id.* at 10-12.  As to Count II, false arrest, either probable cause or arguable probable cause existed for Plaintiff's arrest. *Id.* at 12-15.  In addition, because the state law claims are governed under the same standards as federal law, Defendants argue that Counts III and IV fail to state a claim. *Id.* at 15-16.  Defendants contend that Counts V and VI also fail to state a claim because they are based on legal assertions that lack factual support; even

if these assertions were credited, however, the claims would be barred by sovereign immunity. *Id.* at 16-20.   Lastly, Defendants move to strike as "irrelevant and scandalous" the references to race and ethnicity in the Amended Complaint. *Id.* at 20-24.

In response, Plaintiff first argues that the excessive force allegations demonstrate that her injuries were not de minimis and no force was necessary in the situation. Doc. 21 at 6-10.  As to false arrest, she contends that mere suspicion is not sufficient, particularly since Katzer failed to investigate before seizing her and she did not match the description of anyone involved in the altercation. *Id.* at 10-12.  The racial descriptions of the individuals involved are therefore highly relevant to her claim. *Id.* at 12, 17-18, 20-21.  Plaintiff argues that clearly established law demonstrates that Katzer's actions were unlawful, and therefore he is not protected by qualified immunity. *Id.* at 12-14.  She agrees with Defendants that Counts III and IV are governed by similar standards as federal law, but argues that sovereign immunity does not bar the claims. *Id.* at 14-19.  Finally, Plaintiff explains that she is withdrawing Count V "as to Defendant Katzer" and argues that Katzer is liable for Count VI.

Defendants' reply argues that Plaintiff relies on new allegations and unsupported assertions that cannot be credited, particularly as to Katzer's knowledge. Doc. 24 at 1-5.  Defendants also assert that the fact that an arrestee was not prosecuted is irrelevant to a false arrest claim. *Id.* at 4-5.  Finally, they point out that Plaintiff has not disputed that Gualtieri cannot be liable for Counts V and VI, and argue that

Plaintiff is improperly attempting to substitute parties through her opposition. *Id.* at 5-7.

## II.   MOTION TO DISMISS

### A. <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), quoting Fed. R. Civ. P. 8(a)(2). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Overall, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Qualified immunity shields government officials who are acting within their discretionary authority from money damages unless the plaintiff can establish that (1) the official violated a statutory or constitutional right, and (2) the right was clearly

established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citations omitted).  Courts are directed to determine the validity of a claimed qualified immunity defense at the earliest possible time. *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019).   Accordingly, "[a]lthough the defense of qualified immunity is typically addressed at the summary judgment stage of the case, it may be raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotations and modifications omitted).  A motion to dismiss on qualified immunity grounds is due to be granted when the complaint fails to allege the violation of a clearly established constitutional right, accepting all factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Id.*

**B. Discussion**

Defendants contend that each of Plaintiff's claims is due to be dismissed for failure to state a claim, qualified immunity, and/or sovereign immunity.  Each count will be discussed in turn.

**1. *Count I: Excessive Force Under 42 U.S.C. § 1983***

Count I seeks to hold Katzer individually liable for using excessive force in violation of the Fourth Amendment to the United States Constitution. Doc. 13 ¶ 52. Plaintiff alleges that the force used was objectively unreasonable and far exceeded the level of force necessary, particularly as she did not present a threat of danger, resistance, or flight. *Id.* ¶¶ 53-55.  She asserts that Katzer's conduct violated clearly

established constitutional rights of which a reasonable officer would have been aware. *Id.* ¶ 57.

Defendants argue that Katzer is protected by qualified immunity, because the type of force he allegedly used was de minimis and did not violate the Fourth Amendment.[2]  Plaintiff responds that the severity of her injuries precludes a finding that the use of force was de minimis in light of the factors announced in *Graham v. Connor*, 490 U.S. 386, 396 (1989), which weigh in Plaintiff's favor.

The Fourth Amendment protects individuals against the use of excessive force in the course of an arrest. *Graham*, 490 U.S. at 394-95.  Force is not excessive if a reasonable officer would believe that it was necessary in the situation at hand. *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citation omitted).  This question is fact-specific and must be viewed from the perspective of a reasonable officer on the scene, rather than in hindsight. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1325 (11th Cir. 2017). The Eleventh Circuit has held that the following factors are relevant to determine whether the amount of force used by a police officer was proper: 1) the severity of the crime at issue, 2) whether the suspect posed an immediate threat to the safety of the officers or others, 3) whether the suspect was actively resisting arrest or attempting to flee, 4) the relationship between the need for the application of force and the amount of force used, and 5) the extent of the injury inflicted. *Lee*, 284 F.3d at 1198-97, citing

---

[2] Plaintiff does not dispute that Katzer was acting within his discretionary authority, the first step of the qualified immunity analysis. See Doc. 17 at 12, citing Doc. 13 ¶ 3.  Accordingly, the burden shifts to Plaintiff to prove that qualified immunity does not apply. *See*, *e.g.*, *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019).

*Graham*, 490 U.S. at 396, and *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986); *see also Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019).

The right to make an arrest necessarily carries with it the right to use "some degree of physical coercion." *Graham*, 490 U.S. at 396. As a result, "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000). In *Nolin*, for example, the court held that the amount of force used was de minimis when the arresting officer grabbed the plaintiff from behind, threw him against a van, kneed him in the back, searched his groin area in an uncomfortable manner, and handcuffed him; the alleged conduct caused bruising but did not necessitate medical attention. *Id.* at 1255, 1258 n.4. Force will also not be considered excessive where the amount of force used caused an injury far beyond what a reasonable officer could have predicted. In *Rodridguez v. Farrell*, 280 F.3d 1341, 1351-53 (11th Cir. 2002), the amount of force used was not excessive where the officer employed a "common non-excessive handcuffing technique (that would ordinarily be painful but cause minimal injury)" that happened to cause severe injury—the amputation of the plaintiff's arm—because of a preexisting condition. On the other hand, where a plaintiff "of ordinary vulnerability" sustains a serious injury, the nature and extent of the plaintiff's injuries are "key factors in determining whether the use of force was reasonable." *Sebastian*, 918 F.3d at 1309 (handcuffing constituted excessive force where it was so tight that the plaintiff suffered permanent injury).

9

Here, the application of the *Graham* factors weighs in Plaintiff's favor.  Plaintiff alleges that Katzer began using force on her immediately after he entered the bar, presumably believing she was involved in the altercation that had brought him there. If she were involved in the altercation, a reasonable officer could believe that she posed a safety threat to Katzer or other patrons.  However, once Katzer grabbed her, any threat that may have existed would have been neutralized.  After all, Plaintiff alleges that she did not resist or batter him in any way.  There is also no indication that she was attempting to flee.  Yet she alleges that Katzer then threw her against a wall and threw her onto a video game console, which he smashed her head against while twisting her right arm up and back so hard that she required shoulder surgery and physical therapy.  Taking Plaintiff's allegations as true, the *Graham* factors demonstrate that the amount of force Katzer used against her was unreasonable.

Defendants argue that courts have upheld similar uses of force as de minimis. Doc. 17 at 10-11.  It is true that the description of the actions in the cases they cite is similar to Katzer's actions alleged here.  However, in most of the cases Defendants rely on the plaintiff experienced either minor or no injury. *See Nolin*, 207 F.3d at 1255 (plaintiff did not need medical attention); *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1458, 1460-61 (11th Cir. 1997) ("the actual force used and the injury inflicted were both minor in nature"); *Woodruff v. City of Trussville*, 434 F. App'x 852 (11th Cir. 2011) (no medical treatment); *Bryan v. Spillman*, 217 F. App'x 882, 886 (11th Cir. 2007) (no medical treatment or lasting injury); *see also Rodriguez*, 280 F.3d at 1353 (injury caused by preexisting condition).  *Taylor v. Taylor*, 649 F. App'x 737 (11th Cir. 2016), is an

exception.  In *Taylor*, the officer slammed the plaintiff's head face first into a car and broke her hand while handcuffing her. *Id.* at 741.  Without addressing the extent of the plaintiff's injuries, the court concluded that the use of force was de minimis because the actions were similar to those alleged in *Jones* and *Nolin*.  However, this unpublished opinion is not controlling here for several reasons.  First, the *Graham* factors weighed differently in *Taylor*, where the officer had an arrest warrant for the plaintiff for allegedly making repeated threats to burn down an acquaintance's home, and the plaintiff refused to get into a police car when the officer directed her to. *Id.* at 740.  Second, since *Taylor* was decided the Eleventh Circuit has emphasized that the extent of a plaintiff's injury—a factor the *Taylor* court did not address at all—is one of the "key factors" for courts to consider. *Sebastian*, 918 F.3d at 1309; *see also Stephens v. DeGiovanni*, 852 F.3d 1298, 1327 (11th Cir. 2017) ("the amount of force used…in arresting Stephens, which caused his severe and permanent injuries…forecloses any de minimis argument[,]" where deputy's actions were "unprovoked and completely unnecessary").  In this case, Plaintiff's injury is severe enough that it cannot be described as de minimis, when viewed in context with the other *Graham* factors.[3]

The allegation that Plaintiff was not resisting is also highly significant.  The Eleventh Circuit has "repeatedly ruled that [an] officer violates the Fourth Amendment and is denied qualified immunity" where he uses "gratuitous and

---

[3] To the extent that Plaintiff also relies on her sprained ankle as evidence of a severe injury, her allegations demonstrate that it resulted from a preexisting injury that Katzer could not have known about, rather than the use of excessive force. *See* Doc. 13 ¶ 24; *Rodriguez v. Farrell*, 280 F.3d at 1351-53.

excessive force against a suspect who is under control, not resisting, and obeying commands." *Patel v. City of Madison, Ala.*, 959 F.3d 1330, 1339 (11th Cir. 2020), quoting *Stephens*, 852 F.3d at 1328.   Notably, the suspect does not need to be handcuffed for the court to make such a finding. *Id.* at 1340.   In *Patel*, the court held that a jury could reasonably find that the plaintiff was not resisting when the officer swept his feet from the ground "in a manner that all but ensured" the plaintiff would land on his head. *Id.* at 1335, 1339; *see also Ingram v. Kubik*, 30 F.4th 1241, 1253 (11th Cir. 2022) (the use of "injurious force against a non-resisting, compliant, and docile subject" was "utterly disproportionate to the level of force reasonably necessary"); *cf. Williams v. Sirmons*, 307 F. App'x 354, 361 (11th Cir. 2009) (the use of force against a visibly pregnant woman was not excessive where she was fleeing from officers and no serious injury resulted).   Here, as noted, to the extent a reasonable officer would believe that Plaintiff needed to be subdued when Katzer entered the bar, this had arguably occurred once Katzer grabbed her and she did not resist.   His subsequent alleged actions of throwing her against a wall, throwing her against a video game console, and slamming her head into the console multiple times while twisting her arm so hard that she required shoulder surgery were disproportionate to any reasonably necessary level of force.

Further, the law that the disproportionate use of force against a non-resisting suspect is excessive was clearly established by the time of Plaintiff's arrest in April 2019. *See Sebastian*, 918 F.3d 1309 (decided on March 14, 2019); *Stephens*, 852 F.3d at 1328 (decided on March 30, 2017).   Accordingly, the Court finds that Katzer is not

entitled to dismissal based on qualified immunity at this stage of the action, as the Amended Complaint states a claim for excessive force.

### 2. Count III: Battery Under Florida Law

Count III is a state law claim of battery brought against Gualtieri in his official capacity, alleging that he is vicariously liable for the same alleged actions of Katzer that Plaintiff alleges constitute excessive force. Doc. 13 ¶¶ 71-77.  Defendants argue, and the Court agrees, that a Florida battery claim against a police officer based on the use of excessive force is evaluated under the same standard as federal law. Doc. 17 at 15; *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006). Defendants contend that Count III is due to be dismissed for failure to state a claim for the same reasons as Count I. Doc. 17 at 15.[4]  The Court has concluded that the Amended Complaint adequately alleges that Katzer used excessive force against Plaintiff. Therefore, Defendants' motion to dismiss Count III is also due to be denied.

### 3. Count II: False Arrest Under 42 U.S.C. § 1983

Count II alleges that Katzer is individually liable for violating the Fourth Amendment through a false arrest. Doc. 13 ¶¶ 59-70.  Plaintiff alleges that Katzer unlawfully restrained her, which "caused [her] to be arrested and charged with resisting an officer without violence." *Id.* ¶ 65.  Plaintiff denies that she resisted him,

---

[4] Plaintiff argues at length that Gualtieri is not entitled to sovereign immunity for Count III. Doc. 21 at 14-16.  But Defendants do not argue that he is. *See* Doc. 17 at 15.  Accordingly, the Court will not address sovereign immunity with respect to Count III.

presented a threat of violence or danger to him, or obstructed his ability to perform lawful duties; she also alleges that she complied with lawful orders. *Id.* ¶ 66.

Defendants argue that Katzer had probable cause, or at least arguable probable cause, to arrest Plaintiff based on a fair probability upon which a reasonable and prudent officer would believe she was involved in the bar fight. Doc. 17 at 12-14. They contend that the Amended Complaint does not allege what information was given to the 911 dispatchers as to the descriptions of everyone involved in the altercation, or what Katzer himself knew. *Id.* at 13. Defendants also argue that the fact that the State Attorney's office dropped criminal charges against Plaintiff is irrelevant to the question of probable cause. *Id.* at 13-14. Because there was probable cause to arrest Plaintiff, the allegations fail to state a claim for false arrest; in the alternative, because there was arguable probable cause, Katzer is protected by qualified immunity. *Id.* at 14-15.

In response, Plaintiff argues that Katzer's decision to arrest her was based only on unfounded suspicion, because she was rendering aid to an injured person, rather than probable cause or arguable probable cause. Doc. 21 at 11-12. Plaintiff contends that because she did not fit the description of the suspect, there was no probability that she had committed a crime. *Id.* at 12. Further, bar patrons told Katzer that she was not involved in the fight. *Id.* at 18. With respect to Counts II and IV, Plaintiff argues that an arresting officer must conduct a reasonable investigation to determine whether probable cause exists. *Id.* at 17-18. She also contests Defendants' contention that the prosecution decision is irrelevant. *Id.* at 18.

14

Police officers violate an individual's Fourth Amendment right against unreasonable seizures if they arrest the person without probable cause. *Garcia v. Casey*, 75 F.4th 1176, 1179 (11th Cir. 2019) (citations omitted). "Probable cause is established where facts, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Id.* (quotation omitted). Moreover, an officer will be protected by qualified immunity as long as he had arguable probable cause: "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (quotation omitted). Arguable probable cause triggers qualified immunity "if a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Garcia*, 75 F.4th at 1179 (quotation omitted). The law must "make[] it obvious that the officer's acts violated the plaintiff's rights." *Id.* Under the "any-crime rule," an officer will be insulated from false arrest claims if arguable probable cause existed to arrest the suspect for *some* crime, even if it was not the crime the officer thought or said had occurred. *Id.*

Plaintiff alleges that Katzer arrested her for battery on a law enforcement officer, and/or resisting an officer without violence. Doc. 13 ¶¶ 35, 65. An individual commits battery on a law enforcement officer when she knowingly and intentionally causes bodily harm to, touches, or strikes a law enforcement officer against their will. Fla. Stat. §§ 784.03, 784.07. Resisting an officer without violence requires an individual to

knowingly "resist, obstruct, or oppose any officer," or otherwise knowingly interfere with the officer's lawful activities. Fla Stat. § 843.02; *Polite v. State*, 973 So.2d 1107, 1113-14 (Fla. 2007); *J.M. v. State*, 960 So.2d 813, 815 (Fla. 3d DCA 2007).  Plaintiff's allegations, taken as true, preclude the existence of probable cause or arguable probable cause for either offense.  She alleges that she did not know who grabbed her when Katzer first came into contact with her, but that she did not resist, threaten, or batter him. Doc. 13 ¶¶ 22-23, 36, 66.  Further, she complied with lawful orders and did not obstruct his ability to perform his lawful duties. *Id.* ¶ 67.  It would therefore be unreasonable for Katzer to believe that Plaintiff had committed these offenses, or that he could lawfully arrest her for them.  And, indeed, Defendants do not argue at this stage that probable cause existed for Katzer to arrest Plaintiff for those offenses.

Under the "any-crime rule," however, the false arrest analysis is not restricted to the offenses that Katzer allegedly identified at the time of the offense.  Defendants argue instead that he had probable cause or arguable probable cause to arrest her for her perceived involvement in the bar fight.  Plaintiff alleges that she was not involved in the fight, so any belief that she was involved would be mistaken.  The question now is whether such a belief was objectively reasonable, viewing the "totality of the circumstances" and examining the events leading up to the arrest from the perspective of an objectively reasonable police officer. *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022), quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018).

Plaintiff alleges that an altercation took place between a black male, a white female, and other bar patrons. Doc. 13 ¶¶ 9-14.  She further alleges that a 911 caller

identified Jeremiah, the black male, as a suspect involved in the altercation. *Id.* ¶ 33. It is unknown what other information was given to the 911 operator or to Katzer. Contrary to both parties' arguments, the Court cannot make any inferences regarding what other information was conveyed to Katzer based on these allegations. The Court cannot infer that Katzer knew the white female with whom Plaintiff was speaking had been involved in the fight, or that he even knew the fight was between a man and a woman. *Cf.* Doc. 17 at 12-13. Likewise, it cannot infer that the *only* information Katzer had was that there was a single suspect who was a black male. *Cf.* Doc. 21 at 11-12. What is known from the complaint is that, at the time Katzer entered the bar and grabbed Plaintiff's arm, she was standing near Jeremiah,[5] who had just gotten up, and she was speaking with a white female. *Id.* ¶¶ 15-21. Other men were also exchanging words at this time. *Id.* ¶ 19. A reasonable officer entering this scene could have concluded that all individuals exchanging words might have been involved in the fight, including Plaintiff given her proximity to Jeremiah, who fit a description provided by the 911 caller. As a result, the officer could conclude that a reasonable basis existed to temporarily seize Plaintiff, among others, in order to prevent additional violence and investigate the fight.

In this regard, Katzer's initial seizure of Plaintiff after he entered the bar may be most accurately characterized as an investigatory detention, which requires only

---

[5] The Court infers that they were standing near each other, because Plaintiff alleges that she was administering medical assistance to him when he lifted himself from the floor immediately before Katzer entered the bar. *Id.* ¶¶ 15-16, 19-20.

reasonable suspicion of criminal activity. An officer "may conduct a limited detention of someone whom the officer reasonably suspects may pose a threat of criminal activity in order to dispel the officer's reasonable fear for his own or others' safety." *Clark v. City of Atlanta, Ga.*, 544 F. App'x 848, 853 (11th Cir. 2013), quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968). The "reasonable suspicion" standard requires that "the facts available to the officer at the moment of the seizure…warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.*, quoting *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). Moreover, reasonable suspicion requires "considerably less than a preponderance of the evidence." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). For the reasons discussed above, the Court finds that this standard was comfortably met.

The initial seizure of Plaintiff quickly evolved into a "full-scale arrest," however, which must be supported by probable cause. *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006) (citation omitted).[6] And it is less clear that probable cause existed, particularly by the end of the encounter between Katzer and Plaintiff. As noted, no additional grounds to arrest her (such as for battery or resisting) had arisen since the initial seizure, nor would Plaintiff's alleged actions have given Katzer additional cause to believe she had been involved in the fight. On the contrary, Plaintiff alleges that

---

[6] The allegations in the Amended Complaint support a two-step analysis of the encounter between Katzer and Plaintiff. *See* Doc. 13 ¶ 65 (alleging that "Katzer's unlawful seizure caused Ms. Neira to be arrested and charged with resisting an officer without violence."); *see also*, *e.g.*, *Brienza v. City of Peachtree, Ga.*, No. 21-12290, 2022 WL 3841095, *6-7 (11th Cir. Aug. 30, 2022) (reasonable suspicion and probable cause for underage drinking supported plaintiff's initial detention, then probable cause supported his arrest for obstruction).

bystanders notified Katzer that he "had the wrong person" and that Plaintiff "had done nothing wrong." Doc. 13 ¶ 32.   While it may have been reasonable for Katzer to suspect Plaintiff had been involved in the fight in the chaos of his initial entry into the bar, there was no reason for his suspicion to evolve into a belief that there was a "substantial chance of criminal activity" on Plaintiff's part. *See Washington*, 25 F.4th at 902 (clarifying legal standard for probable cause); *Jessup v. Miami-Dade Cnty.*, 440 F. App'x 689, 694 (11th Cir. 2011) (collecting cases, finding no lawful reason to continue detention when officers found out there was no stolen property); *Martin v. Miami-Dade Cnty.*, No. 20-cv-22107, --- F.Supp.3d ---, 2023 WL 2475565, *4 (S.D. Fla. March 13, 2023) (arguable reasonable suspicion dissipated when plaintiffs left parking lot without engaging in the criminal activity officer suspected); *see also Croom v. Balkwill*, 645 F.3d 1240, 1250 (11th Cir. 2011) (an investigative detention "that is reasonable at its inception may   quickly become *unreasonable* if it extends beyond its unique justification.") (emphasis in original).

After any possible public safety threat had been subdued, the allegations demonstrate that Katzer had no reason to conclude Plaintiff had been involved in the fight except that she was one of many individuals exchanging words, and she was standing next to someone described in the 911 call.   These facts would not lead a reasonable officer to determine there was a substantial chance or a "fair probability" that she committed a crime. *See Kaley v. United States*, 571 U.S. 320, 338 (2014).   As a result, the Court finds that she has met her burden of establishing, at this stage, that an

arrest for involvement in the fight was not supported by probable cause.[7]  Defendants' motion to dismiss Count II for failure to state a claim is therefore due to be denied.

Nonetheless, Katzer will be protected by qualified immunity if he had even arguable probable cause to arrest her, which is a "lower standard" than probable cause. *Jones v. Butt*, 643 F. App'x 926, 929 (11th Cir. 2016); *see also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (the arguable probable cause standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law," accommodating "reasonable error.") (quotations omitted).

In determining whether arguable probable cause existed, the Court notes that Katzer was not required to credit the bystanders' statements that Plaintiff was not involved in the fight.  *See Davis v. City of Apopka*, No. 20-11994, 2023 WL 5524736, *13 (11th Cir. Aug. 28, 2023) (an officer is not required to believe exculpatory evidence or to weigh the evidence in such a way as to conclude that probable cause does not exist, unless the exculpatory evidence "obviously and irrefutably establishe[s]" that it does not) (quotations and citations omitted); *Huebner v. Bradshaw*, 935 F.3d 1183, 1188 (11th Cir. 2019) (an officer "is not required to sift through conflicting evidence or resolve

---

[7] Plaintiff also argues that the fact that the State Attorney's Office dropped the charges against her demonstrates a lack of probable cause. Doc. 21 at 18.  However, Defendant is correct that the Eleventh Circuit has held that "[t]he fact that all charges against the plaintiffs were eventually dismissed for one reason or another is of no consequence" to the determination of probable cause. *L.S.T., Inc. v. Crow*, 49 F.3d 679, 685 (11th Cir. 1995) (quotation omitted); *Wooden v. Town of Eatonville*, No. 22-10649, 2023 WL 5091809, *7 (11th Cir. Aug. 9, 2023) ("the fact that criminal charges were dropped or not brought against Wooden for the arrests has no bearing on the probable cause analysis.").  Plaintiff does not provide any contradictory authority.

issues of credibility, so long as the totality of the circumstances presented a sufficient basis for believing that an offense had been committed"); *Washington*, 25 F.4th at 902 (probable cause did not dissipate based on one exculpatory statement that officer had "plenty of reasons to doubt."). The bystanders' statements do not "obviously and irrefutably" establish Plaintiff's innocence, because it is possible that a reasonable officer would have concluded they were not credible or reliable for one reason or another. Katzer's alleged remark that Plaintiff "chose to help the wrong person," Doc. 13 ¶ 33, seems to indicate his continued belief that she was assisting Jeremiah in the fight.

To determine whether arguable probable cause existed, the Court will consider the totality of the circumstances and the events leading up to the arrest to determine what Katzer knew at the time he arrested Plaintiff. The Eleventh Circuit employed this approach at the summary judgment stage in *Dixon v. City of Birmingham, Ala.*, No. 22-10591, 2022 WL 17247554, *4 (11th Cir. Nov. 28, 2022), noting that it must view the evidence in the light most favorable to the plaintiff as the non-moving party. The court found that the officer knew only that: (1) a non-responsive infant had been taken to the hospital following a 911 call; (2) one plaintiff was the infant's caretaker; and (3) the other plaintiff used the past tense when describing the infant's age. *Id.* From these facts, "without more," the court concluded the officer could not have reasonably believed there was a substantial chance of criminal activity, and that he therefore lacked even arguable probable cause. *Id.*

Here, accepting Plaintiff's factual allegations as true, and making all reasonable inferences in her favor, the allegations establish that at the time of arrest Katzer knew: (1) there was a bar fight; (2) one person involved in the fight was a black male; (3) Plaintiff was standing next to a black male when Katzer walked in; and (4) many people in the bar, including Plaintiff, were exchanging words when Katzer walked in. As in *Dixon*, these facts are insufficient to allow a reasonable officer to come to the conclusion that there was a substantial chance Plaintiff had engaged in criminal activity. Accordingly, Plaintiff has met her burden of demonstrating that there was no arguable probable cause.

"Where an officer lacks even arguable probable cause, he violates the arrestee's clearly established right to be free from unreasonable seizures." *Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1320 (2016). As such, at this stage of the case, the Court cannot find that qualified immunity applies. Defendants' motion to dismiss Count II on qualified immunity grounds is due to be denied.

### 4. Count IV: False Arrest Under Common Law

Count IV alleges that Gualtieri is vicariously liable for Katzer's false arrest under the common law. Doc. 13 ¶¶ 78-85. Defendants move to dismiss for failure to state a claim, arguing that probable cause existed pursuant to the same standard as federal law. Doc. 17 at 15-16.[8] Because the Court has already determined that the

---

[8] Again, contrary to Plaintiff's response in opposition, Defendants do not argue that Count IV should be dismissed on sovereign immunity grounds.

allegations, taken as true, demonstrate that probable cause did not exist, Defendants'
motion to dismiss Count IV is also due to be denied.

### 5. *Counts V and VI: Intentional Infliction of Emotional Distress*

Counts V and VI of the Amended Complaint allege common law claims of
intentional infliction of emotional distress against Gualtieri in his official capacity.
Count V seeks to hold Gualtieri vicariously liable for Katzer's actions in allegedly
causing Plaintiff to defecate on herself, which Plaintiff alleges was intentional,
reckless, and outrageous. Doc. 13 ¶¶ 86-82.   Count VI alleges that Gualtieri is
vicariously liable for jail staffers' refusal to allow Plaintiff to clean herself, which was
also intentional, reckless, and outrageous. *Id.* ¶¶ 93-99.[9]

Defendants argue that both counts are due to be dismissed because they fail to
state a claim and are barred by sovereign immunity. Doc. 17 at 16-20.  With respect to
Count V, they contend that the Amended Complaint does not allege any factual
support for its contention that Katzer knew or should have known that his alleged
battery would cause Plaintiff to defecate on herself. *Id.* at 17-18.  Similarly, they argue
that the allegations do not contain factual support for the Count VI contention that the
jail staffers knew or should have known she would suffer emotional distress from the
refusal to let her clean herself. *Id.* at 18-19.  In any event, Defendants argue that neither

---

[9] Count V also appears to attribute to Katzer the failure to afford Plaintiff an opportunity to
clean herself. *Id.* ¶¶ 88, 91.  However, the underlying factual allegations assert only that
Pinellas County jail staffers refused to allow her to clean herself; it does not contain any
allegations attributing such conduct to Katzer. *Id.* ¶ 40.  Accordingly, the Court finds that this
allegation relates only to Count VI, which pertains to the alleged jail staffers' conduct rather
than Katzer's conduct.

action is severe enough to state a claim for intentional infliction of emotional distress. *Id.* at 19.   Moreover, Defendants contend that both counts are barred by sovereign immunity, because the reckless element of intentional infliction of emotional distress is equivalent to "willful and wanton conduct," which falls under the sovereign immunity statute. *Id.* at 19-20.

Plaintiff's response in opposition as to Counts V and VI is disconnected from the actual pleadings and arguments.   As to Count V, Plaintiff asserts in a header, without explanation, that Gualtieri is liable for Katzer's commission of intentional infliction of emotional distress—as alleged in the Amended Complaint—but then states in the text that she "agrees to withdraw the claim against Defendant Katzer in his individual capacity." Doc. 21 at 19.   The Amended Complaint does not contain a claim for intentional infliction of emotional distress against Katzer in his individual capacity.   Therefore, Plaintiff has not substantively responded to Defendant's motion to dismiss Count V.

With respect to Count VI, Plaintiff argues that she has sufficiently stated a claim against Katzer for the jail staffer's intentional infliction of emotional distress.   Again, however, Katzer is not named in Count VI.   To the extent that Plaintiff seeks to substitute parties through her response in opposition, as Defendants contend, Doc. 24 at 5-6, it is well-settled that a party cannot amend its complaint through a response in opposition to a motion to dismiss. *See*, *e.g.*, *Eiras v. Florida*, 239 F.Supp.3d 1331, 1342 (M.D. Fla. 2017) (citation and quotation omitted) ("it is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion

24

to dismiss"); *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (new claim raised for the first time in response to motion to dismiss was not properly raised below). Plaintiff's opposition fails to respond at all to Defendants' arguments regarding Gualtieri's liability for Count VI.

To state a claim for intentional infliction of emotional distress in Florida, a plaintiff must show: "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."*Aguirre-Jarquin v. Hemmert*, No. 6:20-cv-25, 2020 WL 13664132, *11 (M.D. Fla. Aug. 28, 2020) (citations omitted).   Under Florida's sovereign immunity statute, the state or its subdivisions will not be vicariously liable for the acts or omissions of its employees committed: "while acting outside the course and scope of her or his employment or [1] committed in bad faith or [2] with malicious purpose or [3] in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).  Myriad courts have held that the reckless conduct element of intentional infliction of emotional distress constitutes "wanton and willful" conduct for the purpose of sovereign immunity. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1330 (11th Cir. 2015) (collecting cases).  As a result, these courts have found that sovereign immunity bars claims of vicarious liability for intentional infliction of emotional distress. *Id.* ("Florida courts have long recognized that [the sovereign immunity statute] bars claims for…intentional infliction of emotional distress[.]"); *see also Aguirre-Jarquin*, 2020 WL 13664132 at *12 (upholding intentional infliction of emotional distress claims against individual officers but

dismissing claim against the sheriff as barred by sovereign immunity); *Bright v. City of Tampa*, No. 8:16-cv-1035, 2017 WL 5248450, *9 (M.D. Fla. May 17, 2017) (dismissing with prejudice claim against the city as barred by sovereign immunity); *Thomas v. City of Palm Coast*, No. 3:14-cv-172, 2015 WL 7429051, *4 (M.D. Fla. Nov. 23, 2015) (same).

Here, too, Plaintiff's allegations that the conduct underlying her intentional infliction of emotional distress claims was "intentional and reckless" and "extreme and outrageous," going "beyond all bounds of decency as to be regarded as odious and utterly intolerable in a civilized community," *see* Doc. 13 ¶¶ 88-89, 95-96, are equivalent to the "wanton and willful" conduct described in the sovereign immunity statute. Accordingly, Gualtieri cannot be held vicariously liable. Counts V and VI are therefore due to be dismissed with prejudice as barred by Fla. Stat. § 768.28(9)(a).[10]

## III.   MOTION TO STRIKE

Under Rule 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice" and "should be granted only when the pleading to be stricken has no possible relation to the controversy." *CMR Construction and Roofing, LLC v. American Capital Assurance Corp.*, 2:20-cv-416-JLB-NPM, 2021 WL 354167, *2 (M.D. Fla. Feb.

---

[10] Because the Court concludes that these counts must be dismissed with prejudice under the doctrine of sovereign immunity, it need not determine whether they also fail to state a claim for intentional infliction of emotional distress.

2, 2021), quoting *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962).[11]

Motions to strike are generally disfavored. *League Logistics, LLC v. Windy City Carriers, Inc.*, 6:20-cv-369-ACC-LHP, 2020 WL 8641600, at *2 (M.D. Fla. Nov. 2, 2020) (citation omitted); *see also Taylor v. Wagner*, No. 8:20-cv-687, 2021 WL 2917765, *6 (M.D. Fla. July 12, 2021) (Honeywell, J.) (noting that striking matters from a pleading is "a drastic remedy and is disfavored"; declining to strike allegations from complaint because "it cannot be said that [they] bear no relationship to the controversy presented.").

Here, Defendants argue that certain references to race and ethnicity within the Amended Complaint should be stricken because they are irrelevant and scandalous. Doc. 17 at 20-24.  The Court disagrees.  References to the race of some individuals are relevant to the descriptions of the patrons involved in the altercation, which has at least some bearing on the knowledge Katzer had when entering the bar.  Moreover, the descriptions are factual and brief, rather than prejudicial or somehow inflammatory; merely identifying individuals' races does not, contrary to Defendants' claims, imply that Katzer is racist.  Indeed, Katzer's own race is not identified in the allegations, likely because it is not relevant to the descriptions of the patrons involved in the altercation.  Defendants have not demonstrated that the references to race are irrelevant or scandalous.

---

[11] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Defendants also briefly argue that the allegation that the State Attorney's Office dropped the charges against Plaintiff should be stricken, because the decision not to prosecute is irrelevant to Plaintiff's claims. Doc. 17 at 24.  But whether that decision is material to the legal merit of the claims does not mean that it has "no possible relation to the controversy." *CMR Construction*, 2021 WL 354167 at *2.  On the contrary, the disposition of the charges against Plaintiff is logically connected to the series of events for which she is suing.  Defendants' motion to strike is due to be denied in its entirety.

## IV.   MOTION TO STAY DISCOVERY

Concurrently with their motion to dismiss, Defendants also moved to stay all discovery and case management deadlines pending disposition of the motion to dismiss. Doc. 18.  Plaintiff did not oppose the motion. *Id.* at 7.  Because the Court has now issued a decision on the motion to dismiss, the motion to stay is moot.  The parties are directed to comply with all deadlines in the Federal Rules of Civil Procedure and Local Rules of the Middle District of Florida.

Accordingly, it is **ORDERED**:

1. The Motion to Dismiss of Defendants Bob Gualtieri and Noble W. Katzer (Doc. 17) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

   a. The motion is granted to the extent that Counts V and VI of the Amended Complaint (Doc. 13) are dismissed with prejudice.  The motion is otherwise denied.

2. Defendants' Unopposed Motion to Stay Discovery (Doc. 18) is **DENIED as moot**.

3. The parties shall conduct a case management meeting and file a case management report on or before October 17, 2023.

**DONE** and **ORDERED** in Tampa, Florida on September 26, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties