UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANNA MARIE ISSABELLE NEIRA

      Plaintiff,

v.                          Case No.:  8:22-cv-1720-NHA

BOB GUALTIERI, in his Official
Capacity as Sheriff of Pinellas
County, Florida, and NOBLE W.
KATZER, Individually,

      Defendants.

_____/

## ORDER

Defendants move for an award of taxable costs, and for an order determining that they are entitled to an attorney's fee and nontaxable costs. Doc. 148. Despite multiple extensions and warnings (*see* Docs. 144, 152 157), Plaintiff has failed to respond to the motion, timely or otherwise. Thus, as the Court warned, it shall construe the motion as unopposed. *See* Order Extending Time to Confer, Doc. 152 p. 3; Order Extending Time to Respond, Doc. 157 p. 2. Upon consideration, I grant Defendants' motion, in part.

## I.    Background

Plaintiff Anna Marie Neira filed this lawsuit in state court, suing Defendants Sheriff Bob Gualtieri and Deputy Noble Katzer for actions relating

to Plaintiff's 2019 arrest. Doc. 1-1. Defendants removed the action to this Court in August 2022. Doc. 1.

Plaintiff brought claims for excessive force, false arrest, battery, and intentional infliction of emotional distress. Doc. 13. She claimed that Defendant Katzer's mistreatment of her during the arrest caused her to suffer a torn labrum, two torn rotator cuffs, recurring back spasms, neck and back pain, and emotional and mental health issues, including PTSD. *Id.* ¶¶ 44-47.

In July of 2025, following numerous discovery and sanctions hearings (Docs. 40, 53, 65, 78, 103) the Court dismissed the case with prejudice as a sanction for Plaintiff's repeated discovery misconduct (Doc. 137), and entered judgment in favor of Defendants (Doc. 139). The Court explained that the severe sanction of dismissal was warranted because of Plaintiff's persistent failure to comply with her discovery obligations and court orders, and her continued use of deceptive and dilatory tactics, even after twice receiving lesser sanctions. Doc. 137.

Defendants then filed the instant motion seeking taxable costs pursuant to Fed. R. Civ. P. Rule 54(d), as well as non-taxable costs and an attorney's fee pursuant to Florida Statute § 768.79. Doc. 148.  They request:

- $10,696.19 in costs Defendants characterize as those permitted under 28 U.S.C. § 1920 (Doc. 148 pp. 4-12; Doc. 141);

- a determination that Defendant Gualtieri is entitled to non-taxable costs under Fla. Stat. § 768.79 comprising $7,225 in costs for expert reports and mediation (Doc. 148 p. 17); and

- a determination that Defendant Gualtieri is entitled to an attorney's fee under Section 768.79 in the amount of $1,666.89 for the time spent litigating the state-law claims against Defendant Gualtieri after Defendants served Plaintiff with offers to settle those claims (Doc. 148 pp. 15-16, Doc. 148-1 p. 3).

Defendants attached to their motion an exhibit showing their repeated and unsuccessful attempts to confer with Plaintiff about the motion. *See* Doc. 148-4. After Defendants filed the motion, however, Plaintiff moved for an extension of time to confer with Defendants and to respond to the motion. Doc. 149.[1] The Court granted Plaintiff's motion in part, allowing the parties an additional twenty-one days to confer regarding the motion, and ordering Plaintiff to respond to the motion no later than September 2, 2025. Doc. 152. The Court explained that, in any response to the motion, Plaintiff should identify the specific costs or fees she opposed and the legal basis for her opposition. *Id.* The Court warned that "failure to timely file a response

---

[1] Plaintiff's motion (Doc. 149) also requested that the Court stay litigation of costs and fees pending her appeal of the order dismissing the case. The Court denied that aspect of the motion. *See* Doc. 152 pp. 3-4.

identifying the contested fees and costs [would] be construed by the Court as an indication that Plaintiff does not oppose Defendants' motion." *Id.* p. 3.

On the day of the extended response deadline, Plaintiff moved for another extension of the response deadline. Doc. 155. Noting Plaintiff's prior extension but acknowledging that Plaintiff was then proceeding pro se and had to respond to a complicated motion, the Court granted a final two-week extension of the deadline for Plaintiff's response. Doc. 157 p. 2. The Court again warned Plaintiff that a failure to timely respond would be treated as an indication that Plaintiff did not oppose Defendant's proposed costs and fees. *Id.*

Plaintiff failed to file a response to the motion, timely or otherwise. Accordingly, the Court treats Defendant's motion (Doc. 148) as unopposed. *See* Local Rule 3.01(c) ("If a party fails to timely respond, the motion is subject to treatment as unopposed").

## II.    Taxable Costs

Rule 54(d) of the Federal Rules of Civil Procedure provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The rule creates a strong presumption in favor of awarding costs. *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007).

That said, a court may not award costs "in excess of those permitted by Congress under 28 U.S.C. § 1920." *Maris Distrib. Co. v. Anheuser-Busch, Inc.,*

4

302 F.3d 1207, 1225 (11th Cir. 2002). The types of costs that may be awarded to the prevailing party are listed in 28 U.S.C. § 1920. Specifically, the statute limits taxable costs to:

(1) fees of the clerk and marshal;

(2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) fees related to printing and witnesses;

(4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) docket fees; and

(6) compensation of court-appointed experts and fees related to interpretation services.

28 U.S.C. § 1920.

"[A]s is evident from § 1920," costs are "limited to relatively minor, incidental expenses," and "almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (internal quotation marks omitted).

The prevailing party bears the burden of submitting a request demonstrating the costs incurred in the case and the party's entitlement to them. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994). A party opposing the taxation of costs then "has the burden to show that circumstances are such that an award of costs is not warranted in a particular case." *JES*

*Properties, Inc. v. USA Equestrian, Inc.*, 432 F. Supp. 2d 1283, 1296 (M.D. Fla. 2006) (citing *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001)). "[T]o defeat the presumption [that taxable costs be awarded] and deny full costs, a district court must have and state a sound basis for doing so." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1355 (11th Cir. 2005) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1038–39 (11th Cir. 2000)).

Here, Plaintiff's lawsuit was dismissed with prejudice and judgment was entered in Defendants' favor. Docs. 137, 139. Thus, Defendants prevailed and are presumptively entitled to taxable costs. *See Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) ("Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d)."); *see also CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016) ("The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.").

By failing to respond to Defendants' motion, Plaintiff has not carried her burden to demonstrate that an award of costs is unwarranted despite Defendants' status as the prevailing party. *See JES Properties*, 432 F. Supp. 2d at 1296. Thus, Defendants are entitled to taxable costs.

Defendants request a total of $10,696.19 in taxable costs pursuant to Fed. R. Civ. P. 54(d). *See* Doc. 148 (motion); Doc. 141 (bill of costs). They seek

6

five general categories of costs: a filing fee, costs of serving witness subpoenas, costs of obtaining deposition transcripts, the court reporter's appearance and processing fees, and costs of copying litigation documents. Doc. 148 pp. 4-12. I address each category in turn.

### a. Filing Fee

Defendants seeks $402 for the filing fee they paid to remove this case to federal court. Doc. 148 p. 4. A filing fee is appropriately taxed under 28 U.S.C. § 1920(1). *See Wallace v. The Kiwi Group, Inc.*, 247 F.R.D. 679, 685 (M.D. Fla. 2008) ("The filing fee and costs of service are permitted under § 1920."). Courts in this district routinely award as a taxable cost a defendant's filing fee for removing a case from state court. *See, e.g. Borrego v. Geovera Specialty Ins. Co.*, No. 6:22-CV-483-CEM-LHP, 2024 WL 3342139 at *5 (M.D. Fla. Apr. 10, 2024), *report and recommendation adopted*, No. 6:22-CV-483-CEM-LHP, 2024 WL 3341340 (M.D. Fla. June 3, 2024); *Lemoine v. Copalo, Inc.*, No. 8:22-CV-702-JSM-AEP, 2023 WL 11262726 at * 3 (M.D. Fla. Nov. 1, 2023); *Cash v. GeoVera Specialty Ins. Co.*, No. 8:21-CV-2642-SCB-AEP, 2023 WL 10352014 at *3 (M.D. Fla. May 31, 2023). Defendants are entitled to $402 for this category of costs.

b. <u>Costs of Serving Witness Subpoenas</u>

Defendants seek \$751.65 for the fees they incurred in serving deposition subpoenas on nine witnesses and records subpoenas on two insurance companies. Doc. 148 pp. 4-7.

Section 1920(1) authorizes taxing costs for "fees of the marshal" for serving subpoenas on witnesses. *See* 28 U.S.C. § 1921(a)(1)(B). Additionally, "private process server fees may be taxed pursuant to §§ 1920(1) and 1921," so long as they "do not exceed the statutory fees authorized in § 1921." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). This limitation caps the recoverable costs at the Marshal's rate, set by the Code of Federal Regulations, which is currently "\$65 per hour (or portion thereof) for each item served . . . plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3); *see Trawick v. Carmike Cinemas, Inc.*, 430 F. Supp. 3d 1354, 1369 (M.D. Ga. 2019) (citing the rate in 28 C.F.R. § 0.114(a)(3) as the limit for private process server costs). Courts generally limit taxable costs for service of subpoenas to "each subpoena served on a witness the [party] could have reasonably believed was at least partially necessary to the litigation." *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1299 (M.D. Fla. 2000) (citing *W&O, Inc.*, 213 F. 3d at 621-24).

Here, Defendants request:

- $40 for a failed attempt to serve witness Gabriel Harling and $32 for the successful service on Mr. Harling;

- $60 for multiple failed service attempts on witness Tricia Harling and $32 for the successful service on Ms. Harling;

- $18 for service on witness Amy Moran;

- $60 for multiple failed service attempts by Absolute Services on witness Mario Neira, and $126 for the service attempts on Mr. Neira by a Robert L. Jones that eventually succeeded;

- $20 for service on witness William Armstrong;

- $20 for service on witness Charlette Armstrong;

- $100 for service on witness Sadie Sykes after multiple failed attempts to serve her;

- $20 for service on witness Richard Kyle Anderson;

- $177 for out-of-state service by Robert L. Jones on witness John Cotter;

- $15.55 for service on the records custodian for CIGNA;

- $31.10 for service on the records custodians for Freedom Life Insurance Company and Guardian Life Insurance Company.

Doc. 148 pp. 5-7. Defendants state that they served each of these subpoenas after Plaintiff identified the witnesses and records in her discovery responses. *Id.* pp. 4-5.

Based on Defendants' uncontradicted representation that each subpoena was served because Plaintiff's discovery responses indicated that the witness or custodian would have relevant information, I find that Defendants "could have reasonably believed" that service of each subpoena "was at least partially necessary to the litigation." *See George*, 114 F. Supp. 2d at 1299 (stating the standard for determining whether service of a subpoena is recoverable as a taxable cost).

Accordingly, each of Defendants' requests to tax the cost of service is due to be granted to the extent that the requested cost does not exceed the rate for service by the Marshal. The regulation setting the Marshal's rate for service sets a baseline fee of $65 for each item served by designating a rate of $65 per hour "or portion thereof." 28 C.F.R. § 0.114(a)(3); *see George*, 114 F. Supp. 2d at 1299 (describing the hourly rate in 28 C.F.R. § 0.114(a)(3) as the Marshal's "minimum fee for process served."). Six of Defendants' reimbursement requests – for service on Amy Moran, William Armstrong, Charlette Armstrong, Richard Anderson, CIGNA, and Freedom Life/Guardian Life – seek less than $65, so each of those requests is granted in full.

The remaining five reimbursement requests – for service on Gabriel Harling, Tricia Harling, Mario Neira, Sadie Sykes, and John Cotter exceed $65 per subpoena.

Four of remaining five requests involve multiple attempts to serve a witness. Defendants explain that they incurred additional costs in serving subpoenas on Gabriel Harling, Tricia Harling, Mario Neira, and Sadie Sykes, because they had to pay for multiple service attempts after discovering that Plaintiff had given them incorrect addresses for the witness, or that the witness had moved. Doc. 148 p. 5. The rate set by 28 C.F.R. § 0.114(a)(3) provides a baseline per-subpoena cost to serve which can increase based on *time* spent effecting service, but nothing in that regulation nor in 28 U.S.C. § 1921 authorizes additional charges based on the *number* of service attempts alone. Thus, in analyzing whether to grant costs exceeding $65, courts in this Circuit require a prevailing party to show the time spent in serving the subpoena. *See James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. 2007) (limiting taxable costs for service of subpoenas to "the minimum charged by the U.S. Marshal's service" because the movant "[did] not provide any information as to the time expended to effectuate service by the private process servers."); *United States v. N. Am. Specialty Ins. Co.*, No. 3:19-CV-514-BJD-PDB, 2024 WL 4287857, at *22 (M.D. Fla. July 31, 2024), *report and recommendation adopted*, 2024 WL 4284977 (M.D. Fla. Sept. 25, 2024) ("If a party requests more than $65.00 without providing evidence of how long service took or whether travel costs or out-of-pocket expenses were incurred,

11

courts have reduced the award to the 'minimum charged by the U.S. Marshal's Service.'") (quoting *James*, 242 F.R.D. at 649).

Here, Defendants provide attach to their bill of costs the process servers' invoices for the repeated service attempts. *See* Doc. 141-1 pp. 4-7, 9-10, 13. However, the invoices do not show the time the process servers in making the attempts. Thus, on this record, I cannot conclude that Defendants are entitled to more than $65 per subpoena served on these four witnesses. Defendants are granted $65 for each of the four subpoenas served on Gabriel Harling, Tricia Harling, Mario Neira, and Sadie Sykes.

Finally, Defendants request to tax $177 in service costs relating to John Cotter. Doc. 148 p. 6. Defendants demonstrate that this reflects the costs associated with serving Cotter in another state. *Id.* Defendants' exhibits include a copy of the invoice for service on Cotter, consisting of a single $52 subpoena service fee plus an additional $125 out-of-state service fee. Doc. 141-1 p. 15. 28 C.F.R. § 0.114(a)(3) allows for the hourly rate of $65 "plus travel costs." Accordingly, I find the additional $125 fee charged for out-of-state service to be taxable as a travel cost. Defendants are entitled to the full $177 they request for serving a subpoena on John Cotter.

To summarize, Defendants' requested costs for service on William Armstrong, Charlette Armstrong, Richard Anderson, CIGNA, Freedom Life/Guardian Life, and John Cotter are granted in full, while the requested

12

costs for service on Gabriel Harling, Tricia Harling, Mario Neira, and Sadie Sykes are granted, but capped at $65 per witness. Altogether, I grant Defendants $561.65 in taxable costs for serving subpoenas.

### c. Costs of Deposition and Interview Transcripts

Defendants seek $4,531.70 in taxable costs for transcripts of depositions taken during discovery and transcripts of testimony taken by the Pinellas County Sheriff's Office Professional Standards Bureau, during the investigation of Plaintiff's pre-suit complaint. Doc. 148 pp. 7-8.

Section 1920(2) allows a prevailing party to tax "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." The "transcripts" covered under that subsection include, but are not limited to, transcripts of depositions. *See W&O, Inc.*, 213 F.3d at 620 ("Though 1920(2) does not specifically mention a deposition, depositions are included by implication in the phrase 'stenographic transcript.'") (cleaned up); *Maris Distrib. Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1224-25 (11th Cir. 2002) (citing Section 1920(2) in upholding a district court's award of taxable costs for both deposition transcripts and trial transcripts).

As indicated by the language of Section 1920(2), the essential question in weighing whether to award costs for any type of transcript is whether the transcript was necessarily obtained for use in the case. *See W&O, Inc.* 213 F.3d at 620-621 ("The question of whether the costs for a deposition are taxable

depends on the factual question of whether the deposition was wholly or partially 'necessarily obtained for use in the case.'"); *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 89 F. Supp. 3d 1294, 1309 (M.D. Fla. 2015) ("Courts in this District have awarded the cost of transcripts of pretrial hearings which were 'reasonably necessary.'"). Transcripts of related pre-suit proceedings in other forums may be taxable under Section 1920(2). *See Viverette v. Lurleen B. Wallace State Junior Coll.*, 587 F.2d 191, 194 (5th Cir. 1979) (upholding an award of costs under 1920(2) for transcripts of a plaintiff's hearing before a state board of education held before the plaintiff initiated the related lawsuit).[2]

Here, Plaintiff seeks $4,531.70 for transcript costs, comprising:

- $202.80 for a transcript of Plaintiff's testimony before the Pinellas County Sheriff's Office Professional Standards Bureau after she filed an internal affairs complaint against Defendant Katzer for Plaintiff's 2019 arrest;

- $731.60 for transcripts of the sworn testimony of Tricia Harling, Gabriel Haring, Sadie Sykes, and Jeremiah Robinson in the Professional Standards Bureau investigation;

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

- $859.95 for the transcript of Defendant Katzer's deposition in this case;

- $2,737.35 for the transcript of Plaintiff's deposition.

Doc. 148 pp. 7-8; *see* Doc. 141-1 pp. 21, 23-25 (supporting claimed costs for transcripts).

The costs for the transcripts of Plaintiff's and Defendant's depositions, and of the witness testimony before the Professional Standards Bureau complaint are taxable as reasonably necessary for use in this case.

Notably, Defendants directly relied on Plaintiff's deposition – which constitutes the largest cost in this category – in their successful motion for sanctions, which led to this case being dismissed. *See* Docs. 94, 94-8.

Although Defendants do not appear to have relied on the transcripts of the Professional Standards Bureau investigation interviews in any filing, those transcripts of sworn testimony in a different proceeding about the same incident would have been important impeachment evidence had this case gone to trial. *See Viverette* 587 F.2d at 194 (transcripts of related pre-suit administrative proceeding can constitute taxable costs).

Finally, taxation of Defendant Katzer's own deposition transcript is taxable to the extent the transcript was reasonably necessary to the case. *See W&O, Inc.* 213 F. 3d at 622 (noting that "[t]here is no consensus as to whether the costs for depositions of parties. . . may be taxed," but holding that

15

transcripts of party depositions can be taxed if "the depositions were reasonably necessary."). Although Defendants do not articulate the necessity of Defendant Katzer's deposition transcript, its usefulness seems facially intuitive, in preparing for cross examination and rebutting anticipated dispositive motions by Plaintiff, for example.

Finally, Defendants provide a sworn declaration stating that each of the transcripts for which Defendants seek reimbursement was "necessarily obtained for use in this case." *See* Doc. 148-1 p. 4. This sworn statement, unrebutted by Plaintiff, creates a strong presumption that the transcript costs are taxable.  Combined with the reasoning above, I find this satisfies Defendants' burden to show that the transcript costs are taxable.

I award $4,531.70 to Defendants for their transcript costs.

d.  Court Reporter Fees

Defendants also seek $1,589.95 for various additional fees charged by the court reporters who transcribed the depositions of Plaintiff and other witnesses. Doc. 148 pp. 11-12. Specifically, Defendants' request:

- Attendance fees for the depositions of Mario Neira and Kyle Anderson (charged in a single invoice, *see* Doc. 141-1 p. 59), in the amount of $465; and

- Appearance, production, and storage fees for Plaintiff's deposition, in the amount of $1,124.95, comprising:

16

        ○  $1,055 for the court reporter's attendance; and

        ○  $69.95 for a "storage fee" and "production fee" for "PDF format exhibits," which were "created upon request," Doc. 141-1 pp. 58-59.

Doc. 148 p. 12.

As a "cost for a deposition," a court reporter's attendance fee is taxable under Section 1920(2) to the extent the depositions were reasonably necessary for the case. *See W&O Inc.*, 213 F.3d at 620-21 ("The question of whether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially 'necessarily obtained for use in the case.'"); *see also In re Skanska USA Civil Se. Inc.*, 700 F. Supp. 3d 1032, 1041 (N.D. Fla. 2023) ("The court may tax costs for the attendance of the court reporter and for the transcript.") (discussing 28 U.S.C. § 1920(2)); *see also Schwarz v. Bigtown Liquors Inc*, 2017 WL 11068271, at *6 (M.D. Fla. May 8, 2017), *report and recommendation adopted*, 2017 WL 11068272 (M.D. Fla. May 26, 2017) ("[C]ourt reporter appearance fees are permitted as it is necessary for the court reporter to appear and record the testimony, and then to subsequently prepare the deposition transcript.") (collecting cases).

The previous section explained that most of the listed deposition transcripts were necessary for use in the case. Additionally, the depositions of Mario Neira and Kyle Anderson were reasonably necessary, because Plaintiff

17

identified them in her discovery responses as having relevant information. Doc. 148 p. 11. Thus, Defendants are entitled to tax the court reporters' attendance fees for those depositions.

However, Defendants have not shown that they are entitled to tax the costs the court reporter charged for preparing and producing PDF exhibits at Defendants' request. While Defendants cite to cases permitting taxation of court reporters' "appearance fees," "attendance fees," and "per diem" for attending depositions, they provide no support for taxation of a court reporter's fees for producing reformatted exhibits. *See* Doc. 148 p. 12. Further, even if a deposition itself is necessary, if "deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." *W&O Inc.*, 213 F.3d at 620 (quotation omitted). Defendants have not explained how the court reporter's creation and production of PDF exhibits was necessary. Thus, Defendants are not entitled to tax the $69.95 charged for those services.

I grant Defendants $1,520 in court reporter attendance fees.

e. Copying Costs

Defendants seek $3,420.89 for "exemplification and making copies necessarily obtained for this case." Doc. 148 pp. 8-11.

"Copies attributable to discovery are a category of copies recoverable under § 1920(4)." *W&O Inc.*, 213 F. 3d at 623 (quotation omitted). "The fees for

exemplification and the costs of making copies are recoverable if the copies were necessarily obtained for use in the case." *In re Skanska*, 700 F. Supp. 3d at 1043 (cleaned up) (citing 28 U.S.C. § 1920(4)). A party seeking costs for copying "must present evidence 'regarding the documents copied including their use or intended use.'" *Id.* (quoting *Cullens v. Georgia Dept. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)). "In evaluating whether copies were necessary, the Court does not award costs for copies made merely for counsel's convenience, such as multiple copies of documents." *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1335 (S.D. Fla. 2009); *see also In re Skanska*, 700 F. Supp. at 1044 ("[C]opies made for the convenience of counsel, including copies for witnesses, are not taxable.").

Here, Defendants seek three categories of copying costs:

- $21.30 for copies of 142 pages of correspondence with opposing counsel, witnesses, and the Court;

- $1,431.15 for 9,541 pages encompassing every filing, correspondence, and other record of this case, which were "printed and placed in the paper litigation case files of Pinella County Sheriff's Office General Counsel's Office"; and

- $1,968.44 for copying costs charged to Defendants by the records departments of the providers they subpoenaed.

19

Doc. 148 p. 9. Defendants attach invoices supporting the charges. Doc. 148 pp. 9-10.

Defendants do not explain why the first two categories of copies were necessarily obtained for this case. Defendants repeatedly state that their requested copying costs were "necessary for the case" (Doc. 148 pp. 8, 11), but they provide little detail as to the "use or intended use" of the copies. *See Cullens*, 29 F.3d at 1494. Indeed, they provide no explanation at all for the use or intended use of the 142 printed pages of correspondence. And printing case-related materials for the Defendants' own internal paper case file would seem, without further explanation, to be a cost "for copies made merely for counsel's convenience." *See Monelus,* 609 F. Supp. 2d at 1335. In the absence of any necessity showing, I find that the first two categories of copying costs are not eligible for taxation under section 1920.

In contrast, I find that the charges imposed by records departments on Defendants, for production of materials responsive to discovery requests are appropriately taxed under Section 1920(4). "Copies attributable to discovery are a category of copies recoverable under § 1920(4)." *W&O Inc.*, 213 F.3d at 623. Given that Plaintiff's medical conditions and treatment were highly contested issues in this case – and issues about which Plaintiff herself repeatedly failed to provide relevant discovery – I find that copying costs for medical records were necessary aspects of Defendants' discovery. Further,

since the copying costs were charged by the producers of the records themselves, they were clearly not incurred merely for counsel's convenience.

Defendants are entitled to tax the $1,968.44 they paid third parties for copies of materials responsive to Defendants' discovery requests.

f.  <u>Taxable Costs Summary</u>

In sum, Defendants are entitled to tax $402 for the filing fee, $561.65 in process server costs, $4,531.70 in transcript costs, $1,520 in costs for court reporter attendance fees, and $1,968.44 in copying costs. In total, I grant Defendants $8,983.79 in taxable costs.

### III.   Attorney's Fee and Non-Taxable Costs

In addition to the Defendants' request for taxable costs under Fed. R. Civ. P. Rule 54(d), Defendant Gualtieri[3] moves for non-taxable costs and an attorney's fee pursuant to Florida Statute §768.79. Doc. 148 p. 13.[4]

Section 768.79 states that, if a defendant makes an "offer of judgment," the offer is not accepted within 30 days, and the court subsequently enters a judgment of no liability for the defendant, then the defendant may recover the "reasonable costs and attorney's fees" it incurred between the offer and the judgment. Fla. Stat. § 768.79 (1). In order for the statute to apply after a judgment of no liability, the  rejected (or ignored) offer must have: (a) been in writing; (b) expressly stated that it was made pursuant to Section 768.79, (c) named the offeror and the offeree, (d) identified whether it was settling a

---

[3] As discussed below, the relevant settlement offers in this case were served by Defendant Gualtieri alone, and pertained only to Plaintiff's two state law claims against Gualtieri in his official capacity. *See* Doc. 148-1 pp. 6-15.

[4] In accordance with the requirement under Local Rule 7.01(a) that a party seeking an attorney's fee and non-taxable expenses first file a motion for entitlement to such costs before requesting a specific amount, the motion only requests a determination that Defendant Gualtieri is entitled to an attorney's fee and non-taxable costs. Nonetheless, Defendant has briefed the requested amount of non-taxable costs, and his attorney has submitted a declaration outlining her requested fee. In light of Plaintiff's demonstrated failure to confer with Defendants on fees and costs and due to the protracted nature of this litigation, I decide both entitlement and amount in this order. *See* Local Rule 1.01(b) ("If reasonably necessary to achieve the purpose of these rules, a judge can temporarily modify or suspend the application of any rule."); Local Rule 1.01(a) (the Rules' purpose are to "advance efficiency, consistency, convenience, and other interests of justice.").

claim for punitive damages, and (e) stated the total amount offered. Fla. Stat. § 768.79 (2).

Courts may decline to award costs and fees otherwise justified under this section if they determine that an offer was made in bad faith. Fla. Stat. § 768.79 (8)(a). However, "the burden is upon the offeree to prove that the offeror acted without good faith," and the good faith standard requires only "that the offeror have some reasonable foundation on which to base an offer." *McMahan v. Toto*, 311 F.3d 1077, 1083 (11th Cir. 2002) (quoting *Levine v. Harris*, 791 So.2d 1175, 1178 (Fla. 4th DCA 2001) and *Schmidt v. Fortner*, 629 So.2d 1036, 2039 (Fla. 4th DCA 1993)).

Additionally, offers under Section 768.79 must meet the requirements of proposals for settlement under Florida Rule of Civil Procedure 1.442. *Cramer v. Palm Ave. Partners, LLC*, 672 B.R. 517, 554 (M.D. Fla. 2025). Rule 1.442 requires that a proposal for settlement "state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served," and that the offer "exclude nonmonetary terms, with the exceptions of a voluntary dismissal of all claims with prejudice and any other nonmonetary terms permitted by statute." FLA. R. CIV. P. 1.442(c)(2). It also clarifies that proposals of settlement under the Rule "may be made by

or to any party or parties and by or to any combination of parties properly identified in the proposal." FLA. R. CIV. P. 1.442(c)(3).[5]

Defendant Gualtieri argues that he is entitled to non-taxable costs and an attorney's fee under Section 768.79, because he served two "Proposals for Settlement and Offers for Judgment" on Plaintiff's then-counsel Farnita Hill, Plaintiff failed to respond to the offers within thirty days, and the Court subsequently entered a judgment in Defendant Gualtieri's favor. Doc. 148 pp. 15-16.

The two offers, attached as exhibits to the motion, were served on Plaintiff's attorney on May 24, 2024. Doc. 148-1 pp. 7, 11. Both offers state that they are made "pursuant to Fla. R. Civ. P. 1.442 and §768.79, Fla. Stat." *Id.* pp. 8, 12. One offer pertains to Count III of the amended complaint (Doc. 13), which accuses Defendant Gualtieri of state-law battery. It offers to settle all claims related to Count III for a sum of $2,000, and requires that Plaintiff dismiss Count III with prejudice. Doc. 148-1 pp. 8-9. The other offer pertains to Count IV, which accuses Defendant Gualtieri of false arrest/imprisonment under state law. *Id.* pp. 12-13. It offers to settle all claims relating to Count IV

---

[5] Rule 1.442 also includes a requirement that proposals for settlement "include a certificate of service in the form required by Florida Rule of General Practice and Judicial Administration," but this aspect of the rule is strictly procedural and thus inapplicable to federal court proceedings. *Horowitch v. Diamond Aircraft Industries, Inc.*, 645 F.3d 1254, 1258 (11th Cir. 2011).

for $500 and requires that Plaintiff dismiss Count IV with prejudice. *Id.* Both offers state that they do not pertain to punitive damages, noting that Plaintiff does not claim punitive damages under Counts III and IV. *Id.* pp. 9, 13.

Defendant Gualtieri states that the offers were made in good faith based on counsel's review of the available evidence and case law suggesting he was likely to succeed on a summary judgment motion on Counts III and IV. Doc. 148 p. 16. Defense counsel Anne McDonough affirms under oath that the offers were made in good faith and that both offers expired without acceptance after being served on Plaintiff's attorney. Doc. 148-1 p. 2.

Defendant Gualtieri seeks reimbursement of nontaxable costs incurred after the offers expired, specifically, of two expert witness fees and the costs of mediation. *Id.* p. 17. Defendant Gualtieri also seeks an attorney's fee for its counsel's work drafting the portions of the summary judgment motion addressed to the state law claims in Counts III and IV, and litigating the present costs and fees motion, all of which work occurred after the settlement offers expired. *Id.* pp. 16-17.

For the reasons stated below, Defendant Gualtieri is entitled to non-taxable costs and an attorney's fee.

a. Section 769.79 Applies to Counts III and IV in this Case.

As a threshold matter, Florida Statutes section 769.79, applies to the state law claims in this case.

Invoking federal question and supplemental jurisdiction, Plaintiff's amended complaint brought two federal claims against Defendant Katzer pursuant to 41 U.S.C. § 1983 (Counts I and II), and four state law claims against Defendant Gualtieri, in his official capacity, for battery (Count III), false arrest/imprisonment (Count IV), and intentional infliction of emotional distress (Counts V and VI). Doc. 13. Before the parties consented to magistrate judge jurisdiction, the District Court dismissed Counts V and VI, the intentional infliction of emotional distress claims against Defendant Gualtieri. Doc. 26. This left the two federal section 1983 claims against Defendant Katzer (Counts I and II), and the two state law claims for battery and false arrest against Defendant Gualtieri (Counts III and IV). *Id.*

Section 769.79 is a substantive law that federal courts must apply in diversity jurisdiction cases. *Jones v. United Space All., L.L.C.*, 494 F.3d 1306, 1309 (11th Cir. 2007). Extending this ruling beyond diversity cases, the Eleventh Circuit has applied section 769.79 to bankruptcy proceedings. *See Menchise v. Akerman Senterfitt*, 532 F.3d 1146 (11th Cir. 2008). In *Menchise*, the circuit court noted that "the language of section 768.79 does not bar its application to claims based on state law that are filed in federal court," and further reasoned that the statute must not be read to exclude claims filed in federal court because the Supremacy Clause of the federal Constitution forbids state legislatures from discriminating against federal forums in their states.

*Id.* at 1150-51. Interpreting *Menchise*, at least one court in this district has held: "Where the Court has both a federal question and supplemental or diversity jurisdiction over Florida claims, § 768.79 applies only to the Florida claims." *Design Pallets, Inc. v. Gray Robinson, P.A.*, 583 F. Supp. 2d 1282, 1287 (M.D. Fla. 2008).

I agree with the holding of *Design Pallets*. Because section 768.79 is a substantive state law, *see Jones*, 494 F.3d at 1309, it should be applied to state claims in federal court if its application does not directly conflict with federal law. *See Menchise*, 532 F.3d at 1152 ("Federal law preempts a state statute when the two directly conflict."). And, while there is no shortage of federal law governing the award of costs and fees, conflicts in applying section 768.79 can be avoided if the state statute is applied only to state-law claims that are the objects of settlement offers pursuant to section 768.79.

However, there is another caveat to awarding costs and fees under section 768.79. In *Design Pallets*, the district court recognized that section 768.79 could apply to state law claims in supplemental jurisdiction cases, but held that it did not apply to the state claims in that case. 583 F. Supp. at 1287. The court explained that, because it had resolved only the *federal* claims by granting summary judgment for the defendant, and then declined to exercise jurisdiction over the state claims, it would be inappropriate to award fees under the state statute. *Id.* In a footnote, the district court observed: "As a

27

practical matter, even if [the defendant] were entitled to fees for the defense of the State law claims, the allocation of fees to that defense would be minimal inasmuch as defense counsel's efforts after the offer of judgment were focused almost exclusively on the federal claims." *Id.* at 1287 n. 10.

Here, unlike in *Design Pallets*, the Court did not dismiss only the federal claims and decline to exercise its supplemental jurisdiction over the remaining state ones. Rather, the Court affirmatively dismissed Plaintiff's state claims along with the rest. *See* Docs. 138, 139. Although the dismissal was sanctions-based, rather than merits-based, the claims were dismissed with-prejudice, resulting in a judgment in favor of Defendant Gualtieri that triggers application of the Florida fee statute. *See Creative Hardscapes, LLC v. Prawdzik*, 397 So. 3d 163, 168 (Fla. 6th DCA 2024) ("An involuntary dismissal, a dismissal with prejudice, and a second voluntary dismissal (which serves as adjudication on the merits pursuant to rule 1.420(a)(1)) all qualify as a basis of an award of attorney's fees under section 768.79.") (cleaned up); *see also MX Invs., Inc. v. Crawford*, 700 So. 2d 640, 642 (Fla. 1997) *(*"We conclude that section 768.79 [] does not provide a basis for the award of attorney fees and costs unless a dismissal is with prejudice.").

Further distinguishing this case from *Design Pallets*, the post-offer fees and costs Defendant seeks were incurred exclusively in litigating the state claims. Section 768.79 therefore applies.

28

b. <u>Defendant Gualtieri is Entitled to Section 768.79 Relief.</u>

Having determined that Defendant Gualtieri properly moves pursuant to section 768.79, I conclude that he is entitled to an attorney's fee and nontaxable costs.

Combining the relevant aspects of Section 768.79 and Rule 1.442 outlined above, the statutory scheme entitles Defendant Gualtieri to "reasonable fees and costs" he incurred between the expiration of his settlement offers and the entry of judgment in his favor, if the offers: (1) were not accepted within 30 days of service (§ 768.79 (1)); (2) were written offers expressly invoking Section 768.79 (§ 768.79 (2)); (3) named Defendant Gualtieri and Plaintiff (§ 768.79 (2)); (4) stated the amount being offered to settle claims for punitive damages, or that there were no punitive damages claimed (§ 768.79 (2)); (5) specified the total amount offered (§ 768.79 (2)); (6) stated that the offers would resolve all claims for relief between the parties (FLA. R. CIV. P. 1.442(c)(2)); (7) did not include non-monetary terms in the offers, other than the term that Plaintiff dismiss the state claims with prejudice (FLA. R. CIV. P. 1.442(c)(2)); and (8) were made in good faith (§ 768.79 (8)(a))).

The settlement offers Defendant Gualtieri served on Plaintiff on May 24, 2024 satisfy each of these conditions. As confirmed by McDonough's sworn declaration, Plaintiff did not accept the offers within thirty days. Doc. 148-1 p.

2. The offers, which were attached to the motion, were in writing, invoked Section 768.7, and specified that they were offered by the Defendant, Bob Gualtieri (in his official capacity as Pinellas County Sheriff), to the Plaintiff, Anna Marie Isabella Neira. *Id.* pp. 8, 12. Both offers noted that punitive damages were not at issue in the relevant counts. *Id.* pp. 9, 13. The offers stated that they offered a total of $2,000 and $500, respectively and were intended to "fully and finally settle all claims and causes of action, including damages, interest and costs, made in Count III" and "Count IV of the Amended Complaint," respectively. *Id.* pp. 8, 12. Taken together, the two offers would have resolved the entire dispute between Defendant Gualtieri and Plaintiff.[6] *See* Doc. 26 (dismissing Counts V and VI against Defendant Gualtieri in 2023). And the offers did not include any non-monetary terms, except the term that Plaintiff dismiss with prejudice Counts III and IV. *See generally id.* pp. 6-15.

Finally, Defendant Gualtieri made the offers in good faith. The motion and McDonough's declaration both state that the offers were made in good

---

[6] The Court acknowledges that Defendant Katzer was not a party to the Section 768.79 settlement offers (and could not have been, given that Plaintiff brought only federal claims against Katzer), so Plaintiff's acceptance of the offers would not have ended the lawsuit. However, Rule 1.442 states that offers "may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal." FLA. R. CIV. P. 1.442(c)(3). That provision clarifies that the requirement in 1.442(c)(2) that an offer "resolves all damages that would otherwise be awarded in a final judgment in the action" applies only to "the action" between the offeror and the offeree.

faith based on Defendant Gualtieri's evaluation of Plaintiff's claims, Plaintiff's failure to support her claims for damages, and evidence of the incident including an arrest video and witness statements. Doc. 148 p. 16; Doc. 148-1 p. 2. Florida caselaw makes clear that Section 768.79's good faith requirement is a minimal one, and that it is an opposing party's burden to "prove that the offeror acted without good faith." *See McMahan*, 311 F.3d at 1083 (citing to Florida state court cases for these principles). Plaintiff has not opposed Defendants' motion, and thus presents no basis on which to dispute Defendant's sworn statements as to the good faith basis for the settlement offers.[7]

The requirements of section 768.79 and Rule 1.442 are satisfied here. Thus, Defendant Gualtieri is entitled to an award of "reasonable costs and attorney's fees" for litigating the state law claims against him after his section 768.79 offers to Plaintiff expired.

---

[7] While Plaintiff never responded to the present motion, she did allege without elaboration in one of her motions for extensions of time to respond that the proposals "were not made in good faith." Doc. 155 p. 2. But such a conclusory statement, even if properly raised in response to the motion, would not be sufficient to carry Plaintiff's burden to demonstrate bad faith. *See McMahan*, 311 F. 3d at 1083-84 (holding that offerees "did not come close to carrying their burden of proof" that an offer was in bad faith under section 768.79 when the offerees' only basis was that the offer was for a nominal amount while the offerors faced millions in potential liability).

31

c. <u>Attorney's Fee</u>

Defendant Gualtieri requests an attorney's fee for work "researching and writing the summary judgment motion as to the state law battery and false arrest claims and the damages sought thereunder." Doc. 148 p. 16. Again, these claims against Defendant Gualtieri (Counts III and IV), were the only state law claims pending at the time Defendant moved for summary judgment and were the claims for which Defendant Gualtieri served Plaintiff with offers of judgment. Attorney McDonough's sworn declaration states that she spent 15.1 hours on the state law claims in the summary judgment motion after serving the settlement offers, and seeks a fee of $1,666.89 for that time. Doc. 148-1 p. 3.

Federal courts applying state law to determine entitlement to an attorney's fee also generally apply state law to determine the reasonableness of such a fee. *See Trans Coastal Roofing Co., Inc. v. David Boland, Inc.*, 309 F.3d 758 (11th Cir. 2002) (certifying a question to the Florida Supreme Court about the reasonableness of an attorney's fee under a state statute). The Florida Supreme Court has adopted the federal lodestar method to determine what constitutes reasonable attorney's fees. *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010) (citing *Fla. Patient's Compen. Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985)).

32

In addition, Section 768.79 contains its own list of factors that courts should consider when determining the reasonableness of a requested fee under the statute. Fla. Stat. § 768.79(8)(b). Accordingly, I consider the reasonableness of the requested fee under both the lodestar method and the section 768.79 factors, and find that either approach requires awarding McDonough's fee in full.

Under federal law, the reasonableness of an attorney's fee is generally determined by the "lodestar method," which involves multiplying how may hours an attorney reasonably spent working on a case by "the customary hourly rate for similar legal services." *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 686 (11th Cir. 2011) (unpublished) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar is the presumptive award, but courts may exercise their own discretion in determining a reasonable fee in a particular case. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988); *see also* 42 U.S.C.A. § 12205.

The reasonableness of the rate depends on "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation," and a court may use its own expertise in identifying these rates. *Norman*, 836 F.2d at 1299. The reasonableness of the number of hours charged by the attorney seeking fees

33

depends on whether they exercised "billing judgment" in tabulating costs, refraining from billing the adversary for "excessive, redundant, or otherwise unnecessary" hours of work. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

Separately, Section 768.79 advises courts to "consider, along with all other relevant criteria, the following additional factors" in weighing the amount of an attorney's fee:

1. The then apparent merit or lack of merit in the claim.

2. The number and nature of offers made by the parties.

3. The closeness of questions of fact and law at issue.

4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.

5. Whether the suit was a test case presenting questions of far-reaching importance affecting nonparties.

6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79(8)(b).

Here, Defendant requests $1,666.89 for 15.1 hours of work on the motion for summary judgment. Doc. 148-1 p. 2. McDonnough avows that she spent 15.1 hours researching and drafting the relevant portions of the motion and that, to the best of her knowledge, her work costs the Pinellas County

34

taxpayers $110.39 per hour. *Id.* p. 2. McDonough accounts for the time she

spent on the state law claims as follows:

| 3/4/2025 | Research | Researched case law regarding state vs federal false arrest claims; probable cause as bar to state [common law] false arrest claim [(Count IV)]; totality of circumstances review in state false arrest claims | 2.4 |
|---|---|---|---|
| 3/5/2025 | Research | Researched case law regarding state battery vs federal excessive force claims; force used during arrest as subsumed in state false arrest claim [(Count IV)] | 3.2 |
| 3/6/2025 | Research | Researched case law regarding totality of circumstances and state battery claim [(Count III)] ; control of bystanders and separating fighting parties in state battery claims; clearly excessive standard vs Fourth Amendment | 4.1 |
| 3/7/2025 | Research | Researched case law regarding available damages recoverable in state false arrest [(Count IV)] cases | 1.I |
| 3/7/2025 | Draft | Drafted false arrest [(Count IV)], battery [(Count III)] and damages portion of Motion for Final Summary Judgment | 4.3 |
| Total | | | 15.1 |

Doc. 148-1 p. 3.

I find that 15.1 hours to research and draft a summary judgment motion

on two claims to be reasonable and not excessive. Further, McDonough verified

in her declaration that she "reviewed each task and removed each charge for a

task that [wa]s excessive, duplicative, clerical, or otherwise unreasonable." *Id.* p. 3.

And, the hourly rate of $110.39 for McDonough's work is also eminently reasonable. McDonough has offered sworn statements that her employment costs Pinellas County taxpayers $110.39 per hour. *Id.* pp. 2-3.   She has practiced in Florida for over fifteen years and has appeared as lead counsel in over 125 district and circuit court civil rights cases. *Id.* Based on these statements and on the Court's own knowledge of the rates charged by experienced civil litigators in this district, I find that the hourly rate of $110.39 is, if anything, below market value for McDonough's skill and experience.

 Applying the lodestar method, I find the requested fee of $1,666.89 for 15.1 hours of McDonough's work to be reasonable.

The requested fee is also reasonable when analyzed using the factors listed in section 768.79. For example, while the Court did not ultimately reach the "apparent merit or lack of merit in the claim" (Fla. Stat. § 768.79(8)(b)(1)) the Court's sanctions orders noted that Plaintiff's deceptive discovery practices appeared designed to obscure clear deficiencies in her merits and damages claims. As to "[w]hether the person making the offer had unreasonably refused to furnish information" (Fla. Stat. § 768.79(8)(b)(4)), he did not. Rather, defense counsel repeatedly pointed out to Plaintiff the deficiencies in her discovery.  As to "the amount of the additional delay, cost, and expense that the person

making the offer reasonably would be expected to incur if the litigation should be prolonged" (Fla. Stat. § 768.79(8)(b)(6)), this would have been significant. Plaintiff's long pattern of delay and misconduct in this case could have been expected to, and did, cause significant delay and increased costs to Defendant. Thus I find that the section 768.79 factors, like the lodestar review, support an award in favor of Defendant Gualtieri.

Accordingly, I grant Defendant Gualtieri a attorney's fee of $1,666.89.

Defendant Gualtieri also seeks an attorney's fee for the time McDonough spent litigating his entitlement to an attorney's fee. Doc. 148, pp. 16-17. However, the motion states he had not yet determined the amount owed for this work. *Id.* To the extent Defendant wishes to recover an additional attorney's fee for litigating his right to an attorney's fee, he may file a supplemental motion demonstrating a basis for entitlement to it within 21 days of this order.

### d.  Non-Taxable Costs

In addition to the attorney's fee, pursuant to Fla. Stat. § 768.79, Defendant Gualtieri requests reimbursement for litigation costs that are not taxable costs under the Federal Rules. Doc. 148 p. 17. Specifically, Defendant seeks a total of $7,225 as reimbursement for two expert reports and a mediation fee. *Id.* Exhibits attached to his motion include an invoice for $4,785 from Dr. Geoffrey Negin for reviewing and summarizing Plaintiff's medical

records, an invoice for $1,750 from Dr. Steven Knezevich for another medical record review, and a $600 invoice from Stoler Russel for mediation services. Doc. 148-1 pp. 16-19.

Section 768.79 of the Florida Statutes allows prevailing party to recover costs incurred in litigating Florida state law claims on which offers of judgment were not accepted. *See Design Pallets,* 583 F. Supp. 2d at 1287; *Menchise*, 532 F.3d at 1149; *Jones*, 494 F.3d at 1309. Here, unlike his request for an attorney's fee, Defendant Gualtieri does not attempt to demonstrate that the expert and mediation fees for which he seeks reimbursement were incurred in litigating only the state law claims against Defendant Gualtieri.

Accordingly, this aspect of the motion is denied.

## IV.    Conclusion

For the reasons stated, it is ORDERED:

1. Defendants' Motion to Tax Costs and Determine Entitlement for Attorney's Fees and Non-Taxable Costs (Doc. 148) is granted, in part;

2. Defendants are awarded $8,983.79 in taxable costs;

3. Defendant Gualtieri is awarded an attorney's fee of $1,666.89;

4. Defendant Gualtieri's request for an award of non-taxable costs is denied;

5. Defendant Gualtieri may, within 21 days of this order, submit a supplemental motion demonstrating his entitlement to an additional attorney's fee for litigating his entitlement to costs and fees

6. The Clerk is directed to enter an amended judgment reflecting an award to Defendants of $8,983.74 in taxable costs, and an award to Defendant Gualtieri of a $1,666.89 attorney's fee.

DONE on March 18, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

39